**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| PARESH SHAH and SHOBANA SHAH, ) | FILED: JULY 3, 2008 |
| ) | 08CV3811 |
| Plaintiffs, ) | JUDGE NORGLE |
| ) | MAGISTRATE JUDGE ASHMAN |
| v. ) | MKH |
| ) | Case No. |
| WACHOVIA MORTGAGE, FSB, GEORGE ) | |
| GILOU, a/k/a GEORGE SHAMOUN, ) | |
| individually and d/b/a EQUITY ONE and d/b/a ) | Hon. |
| GMC FINANCIAL, STEVE A. SHAMOUN, ) | |
| and PRISM TITLE, LLC, an Illinois limited ) | |
| liability company, ) | |
| ) | |
| Defendants. ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331 and 1441(c), as well as 28 U.S.C. § 1332, Defendant

Wachovia Mortgage, FSB ("Wachovia") hereby removes this action, pending as Case No. 08 CH

19345 in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, to

the United States District Court for the Northern District of Illinois. As grounds for removal,

Defendant states as follows:

1.    Nature of the Action.  This action arises out of a home mortgage loan given by

defendant Wachovia Mortgage, F.S.B. ("Wachovia") to plaintiffs Paresh Shah and Shobana Shah

(collectively, "Plaintiffs").  Plaintiffs seek a variety of relief in this action, including rescission of

the mortgage loan – a form of relief that can only be provided by Wachovia.

2.    State Court Action.  On May 29, 2008, Plaintiffs commenced this action in the

Circuit Court of Cook County, Illinois, Chancery Division, entitled *Shah v. Wachovia Mortgage,*

*FSB, Gilou, Shamoun, and Prism Title, LLC*, Case No. 08 CH 19345 (the "State Court Action").

The six-count Complaint (attached as Exhibit A) asserts claims for violation of the federal Truth

in Lending Act ("TILA"), 15 U.S.C. § 1601 (Count I), (2) violation of the Illinois Consumer

Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 (Counts II, III, and V), (3)

violation of the Illinois Title Insurance Act, 215 ILCS 155/1 (Count VI), and (4) fraud (Count

IV).

3.    Basis for Jurisdiction in this Court.  The basis for jurisdiction in this Court is

federal question jurisdiction under 28 U.S.C. § 1331 and 1441(c).  In the alternative, this case

may also be removed as a result of the diversity of citizenship pursuant to 28 U.S.C. § 1332(a).

4.    Federal Question Jurisdiction.  Although titled as a claim for "rescission," Count I

asserts a claim for violation of TILA, which is a federal statute.  Consequently, this is a civil

action "arising under … the laws … of the United States" within the meaning of 28 U.S.C. §

1331.  *See Cunningham v. Nationscredit Finan. Svcs. Corp.*, 497 F.3d 714, 717 (7th Cir. 2007)

(removal of a TILA claim is proper).  One of the specific forms of relief sought in the TILA

count is "rescission of the loan transaction."  (Complaint, Count I, Prayer for Relief ¶ a, p. 7).

Because Wachovia is the only party from whom such relief is appropriate, the TILA claim

against Wachovia constitutes "a separate and independent claim or cause of action within the

jurisdiction conferred by section 1331" within the meaning of 28 U.S.C. § 1441(c).  As a result,

this action is removable by Wachovia regardless of the presence of any non-removable claims

and without the consent of any other defendants.  *See Fravel v. Stankus*, 936 F. Supp. 474, 479

(N.D. Ill. 1996).

4.      <u>Diversity Jurisdiction.</u>  In the alternative, this case is removable under 28 U.S.C. § 1332 on the basis of diversity of citizenship.  Such removal is appropriate based on the following facts:

(a) <u>Citizenship of Plaintiffs.</u>  Plaintiffs are both residents of the State of Indiana. (Compl. ¶ 8.)  Plaintiffs are thus both citizens of the state of Indiana.  28 U.S.C. § 1332(a).

(b) <u>Citizenship of Defendants.</u>  None of the defendants are citizens of the state of Indiana.  Defendant Wachovia is a corporation organized and existing under the laws of the United States, with its principal place of business in San Antonio, Texas.  (Compl. ¶ 2.) Wachovia is thus a citizen of Texas.  28 U.S.C. § 1332(c).  Gilou is a resident of the State of Illinois.  (Compl. ¶ 4.)  Gilou is thus a citizen of the State of Illinois. Shamoun is a resident of the State of Illinois.  (Compl. ¶ 5.)  Shamoun is thus a citizen of the State of Illinois. Prism is a limited liability company organized and existing under the laws of Illinois, with its principal place of business in Skokie, Illinois.  (Compl. ¶ 6.)  Prism is, therefore, a citizen of Illinois.

(c)  <u>Amount in Controversy.</u>  The amount in controversy exceeds $75,000, exclusive of interest and costs, because (i) Plaintiffs seek the rescission of a loan made to it by Wachovia in the amount of $550,000 (Compl. ¶ 19; *see id.* at 9), and (ii) Plaintiffs seek punitive damages "in an amount not less than the underlying loan amount, or $550,000 (Compl., Count II, Prayer for Relief, ¶ b, p. 10; Count III, Prayer for Relief, ¶ b, p. 13; Count IV, Prayer for Relief, ¶ b, p. 16; Count V, Prayer for Relief, ¶ b, p. 18; Count VI, Prayer for Relief, ¶ b, p. 20.) Because punitive damages are available under state law for the counts in which such damages are sought, inclusion of the claimed amount of punitive damages is appropriate in determining whether the amount-in-controversy requirement of 28 U.S.C. § 1332 is satisfied.  *See Cadek v.*

3

*Great Lakes Dragaway, Inc.*, 58 F.3d 1209, 1211-12 (7th Cir. 1995) (*quoting Risse v. Woodard*, 491 F.2d 1170, 1173 (7th Cir. 1974)).

5.    <u>Removal is Timely</u>.  Wachovia was served with a Summons and the Complaint on June 3, 2008.  Accordingly, this Notice of Removal is timely filed within the thirty days permitted for removal by 28 U.S.C. § 1446(b).

6.    <u>Pleadings and Process</u>.  Pursuant to 28 U.S.C. § 1446(a), Defendant is required to attach to this notice "a copy of all process, pleadings, and orders served upon" it.  A copy of the Complaint and Summons, which are the only process and pleadings served on Wachovia to date, is attached hereto as Exhibit A.

7.    <u>Filing and Service.</u>  A copy of this Notice of Removal is being filed with the Clerk of the Circuit Court of Cook County of the State of Illinois, and it is being served on all counsel of record, consistent with 28 U.S.C. § 1446(d).

CH1 4307942v.1

**WHEREFORE**, Defendant Wachovia Mortgage, FSB, respectfully removes this action, now pending in the Circuit Court of Cook County of the State of Illinois, Chancery Division, to the United States District Court for the Northern District of Illinois.

Date:   July 3, 2008

Respectfully submitted,

WACHOVIA MORTGAGE, FSB

By:  /s/ Jordan S. Ginsberg _____
         One of its Attorneys

Mark B. Blocker
Michael C. Andolina
Jordan S. Ginsberg
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

5

## <u>CERTIFICATE OF SERVICE</u>

Jordan S. Ginsberg, an attorney, hereby certifies that on July 3, 2008, he caused a true and correct copy of the foregoing document to be served upon the following counsel of record by United States mail, first class, postage prepaid:

> Thomas A. Appel, Esq.
> Appel & Kelly, Ltd.
> 18607 Torrence Avenue, Suite 2A
> Suite 2235
> Lansing, IL 60438
> Phone: (708) 474-8800

<u>s/ Jordan S. Ginsberg</u>
Jordan S. Ginsberg

# Exhibit A

COPY 186

DELIVERED THIS 5 DAY OF 6 2008
ROLANDO R. TAFOLLA
SHERIFF OF BEXAR COUNTY, TEXAS
By
DEPUTY

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

CCG N001-10M-1-07-05 (

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

(Name all parties)

PARESH SHAH and SHOBHANA SHAH,

v.

WACHOVIA MORTGAGE, FSB, GEORGE GILOU, a/k/a GEORGE SHAMOUN, individually and d/b/a EQUITY ONE and d/b/a GMC FINANCIAL, STEVE A. SHAMOUN and PRISM TITLE, LLC, an Illinois limited liability company.

SUMMONS

No. 08CH19345

PLEASE SERVE:

WACHOVIA MORTGAGE, FSB
4101 Wiseman Boulevard
San Antonio, Texas 78251

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☒ Richard J. Daley Center, 50 W. Washington, Room 802 , Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 42088
Name: Thomas A. Appel, APPEL & KELLY, LTD.
Atty. for: Plaintiffs
Address: 18607 Torrence Avenue, Suite 2A
City/State/Zip: Lansing, IL 60438
Telephone: (708) 474-8800

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____

MAY 29 2008

DOROTHY BROWN
CLERK OF CIRCUIT COURT

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

(Area Code)   (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

CCG N001-10M-1-07-05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, __CHANCERY__ DIVISION

(Name all parties)

PARESH SHAH and SHOBHANA SHAH,

v.

WACHOVIA MORTGAGE, FSB, GEORGE GILOU, a/k/a
GEORGE SHAMOUN, individually and d/b/a
EQUITY ONE and d/b/a GMC FINANCIAL, STEVE
A. SHAMOUN, and PRISM TITLE, LLC, an
Illinois limited liability company.

SUMMONS

No. 08CH19345

PLEASE SERVE:

WACHOVIA MORTGAGE, FSB
4101 Wiseman Boulevard
San Antonio, Texas 78251

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☒ Richard J. Daley Center, 50 W. Washington, Room __802__, Chicago, Illinois 60602

| | | |
|---|---|---|
| ☐ District 2 - Skokie<br>5600 Old Orchard Rd.<br>Skokie, IL 60077 | ☐ District 3 - Rolling Meadows<br>2121 Euclid<br>Rolling Meadows, IL 60008 | ☐ District 4 - Maywood<br>1500 Maybrook Ave.<br>Maywood, IL 60153 |
| ☐ District 5 - Bridgeview<br>10220 S. 76th Ave.<br>Bridgeview, IL 60455 | ☐ District 6 - Markham<br>16501 S. Kedzie Pkwy.<br>Markham, IL 60426 | ☐ Child Support<br>28 North Clark St., Room 200<br>Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: __42088__

Name: Thomas A. Appel, APPEL & KELLY, LTD.

Atty. for: Plaintiffs

Address: 18607 Torrence Avenue, Suite 2A

City/State/Zip: Lansing, IL 60438

Telephone: (708) 474-8800

Service by Facsimile Transmission will be accepted at: _____

WITNESS, MAY 2 9 2008

DOROTHY BROWN
CLERK OF CIRCUIT COURT
Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant
or other person)

(Area Code)   (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

42088

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

PARESH SHAH and SHOBHANA           )
SHAH,                              )
                                   )
                Plaintiffs,        )
                                   )
v                                  )       NO.  09CH 19345
                                   )
WACHOVIA MORTGAGE, FSB,            )
GEORGE GILOU, a/k/a GEORGE         )
SHAMOUN, individually and          )
d/b/a EQUITY ONE and d/b/a GMC     )
FINANCIAL, STEVE A.                )
SHAMOUN,  and PRISM TITLE, LLC,    )
an Illinois limited liability company, )
                                   )
                Defendants.        )

## COMPLAINT FOR RESCISSION
## AND OTHER RELIEF

Now Comes Plaintiff, PARESH SHAH and SHOBHANA SHAH, by and through their

attorneys, THOMAS A. APPEL, TIMOTHY M. KELLY, and APPEL & KELLY, LTD., and for

their Complaint against Defendants WACHOVIA MORTGAGE, FSB, GEORGE GILOU,

individually and d/b/a GMC  FINANCIAL, STEVE A. SHAMOUN, and PRISM TITLE, LLC,

state as follows:

### COUNT I
### (Rescission)

1.  Plaintiffs PARESH SHAH and SHOBHANA SHAH ("the Shahs") are a resident of

the state of Indiana residing in Munster, Indiana.

1

2. WACHOVIA MORTGAGE, FSB is a mortgage lender and a wholly owned subsidiary of Wachovia Corporation doing business and maintaining offices in Cook County, Illinois, with its principal place of business at 4101 Wiseman Boulevard, San Antonio, Texas 78251.

3. Defendant WACHOVIA MORTGAGE, FSB ("Wachovia") is a federal savings bank organized and existing under the laws of the United States and doing business in Cook County, Chicago, Illinois.

4. Defendant GEORGE GILOU, a/k/a GEORGE SHAMOUN ("GILOU") is a resident of the state of Illinois doing business at 6059 West Irving Park Road, Chicago, Cook County, Illinois 60634.

5. Defendant STEVE A. SHAMOUN is a resident of the state of Illinois residing in Cook County, Illinois.

6. Defendant PRISM TITLE, LLC ("Prism") is an Illinois limited liability company with its principal place of business at 1011 East Touhy Avenue, Suite 350, Skokie, Cook County, Illinois 60018.

7. This action arises under the Federal Truth in Lending Act,15 U.S.C.A. § 1601.

8. At all times mentioned the Shahs were, and are presently, the owners of certain real estate commonly known as 9733 Laurel Court in Munster, Lake County, Indiana ("the Property") and legally described on Exhibit D, a copy of which is attached hereto.

9. Defendants Gilou and Shamoun are mortgage brokers doing business in Chicago, Cook County, Illinois, and at various times herein were acting as agents for Paresh Shah, Wachovia, or both.

10. In March, 2008, Paresh Shah was contacted by Shamoun, who told him he could

2

obtain a loan for Shah in the amount of $555,000 to refinance his existing mortgage at an annual interest rate of 3%, which rate would remain fixed for ten years. In addition, Shamoun also represented that he could obtain a second home equity line of credit for Shah in the amount of $175,000.

11. After several discussions with Shamoun, Paresh Shah requested written documentation which would verify the terms of the loan.

12. Shamoun directed Paresh Shah to Gilou, who then provided Shah with documents which stated that the loan had an annual interest rate of 3% which would remain constant for the first 10 years of the loan. At all times Shamoun and Gilou were aware that Paresh Shah had difficulty reading and understanding documents written in the English language, particularly legal documents.

13. On April 11, 2008, Gilou faxed to Paresh Shah a Truth-In-Lending Statement for the loan which indicated an APR of 6.466%, and the first 120 payments in an amount of $2,339.90. A copy of this Truth-In-Lending Statement is attached hereto as Exhibit A.

14. On April 14, 2008, Shamoun called Paresh Shah and told him that the loan documents were ready for him to sign, and that he and Gilou were on their way to the Shah's home in Munster, Indiana with the loan documents. Paresh Shah called Shamoun and Gilou back, told them not to come, and that he first needed to see copies of the documents showing the 3% interest rate and 10 years of fixed payments.

15. Thereafter, on the afternoon of April 14, 2008, Gilou faxed to Paresh Shah documents indicating an APR of 4.398% for the loan, fixed payments for 120 months, and an amortization schedule showing the paydown of principal over the first ten years of the loan. A

3

copy of such fax transmittal is attached hereto as Exhibit B.

16. In reliance on the loan terms transmitted by Gilou on April 12th and 15th 2008, and in reliance on the previous documents, representations and statements as to the loan terms made by Shamoun and Gilou, on the afternoon of April 15, 2008 Paresh Shah traveled to the offices of Gilou and Shamoun at 6059 West Irving Park Road in Chicago to sign the loan documents. Shah's wife, Shobhana Shah, did not travel to the offices of Gilou and Shamoun.

17. On April 15, 2008, at Gilou's office, Gilou immediately directed Paresh Shah to the signature line of a package of documents ("the loan documents"), telling Shah that he should just sign as indicated and that Gilou would answer any questions regarding the documents after they had all been executed. Only Gilou and Shamoun were present when Paresh Shah signed the loan documents presented to him by Gilou. Because of Paresh Shah's difficulty with the English language, Shah did not understand that the loan documents were not the same as had been represented by Shamoun and Gilou. Upon asking Gilou about his cancellation rights, Gilou stated to Paresh Shah that Shah had until April 18, 2008 to cancel the loan.

18. As a result of Paresh Shah's execution of the loan documents, on April 15, 2008, Wachovia made a loan to the Shahs secured by a mortgage on the Property. This loan was made by Wachovia to the Shahs primarily for personal, family, or household purposes.

19. In connection with the loan, Paresh Shah executed a certain Adjustable Rate Mortgage Note payable to Wachovia in the total amount of $555,000. A copy of such Adjustable Rate Mortgage Note and Mortgage are attached hereto as Exhibits C and D, respectively.

20. In connection with the loan, Paresh Shah signed a Truth-In-Lending Statement. A copy of such Truth-In-Lending Disclosure is attached hereto as Exhibit E.

4

21.   Unknown to Paresh Shah, and concealed and not disclosed to Paresh Shah by Gilou and Shamoun, the APR on the Truth-In-Lending Disclosure had been changed to 7.715%, and showed that only 12 payments were to remain fixed at the amount of $2,339.91.

22.   None of the loan documents were signed by Shobhana Shah, and she was not present at the time the loan documents were signed.

23.   No representative of Prism was present at the time the documents were signed.

*what did Wachovia do ??*

24.   The actions of Wachovia and its agents, Gilou and Shamoun, failed to comply with the requirements of 15 U.S.C.A. § 1638(a) and 12 C.F.R. § 226.18, in the following respects:

*Does it qualify as an agency relationship?*

   a.   Changing the Truth-In-Lending Disclosure, including the APR and payment amounts, at the time of execution of the loan documents without disclosing such changes to Shah;

   b.   Back-dating the loan documents to April 10, 2008 after execution by Shah;

   c.   Failing to provide Shah with a Good Faith Estimate prior to or at the time of signing of the loan documents;

   d.   Failing to accurately date the Notice of Right to Cancel at the signing of the loan documents;

   e.   Inserting a false execution date on the Notice of Right to Cancel after the Notice was signed by Paresh Shah;

   f.   Dating and notarizing the loan documents after signed by Paresh Shah and after the closing, and after delivery to Shah of purportedly executed copies of such loan documents without a date or a notary;

   g.   Forging signatures and initials of Paresh Shah and Shobhana Shah to certain loan documents;

   h.   Failing to provide 2 copies of the Notice of Right to Cancel to Shobhana Shah;

   i.   Inserting false information in the Uniform Residential Loan Application;

    j.       Failing to provide Paresh Shah with a complete copy of the loan documents signed by Shah on April 15, 2008;

    k.       Falsifying the notary information on the loan documents.

25. On April 17, 2008, the Shahs, through their attorney, demanded that Gilou immediately forward by e-mail or fax a copy of all loan documents executed by the Shahs, including the Note and all disclosures in connection with the adjustable rate loan.

26. While Gilou represented that he would forward a complete set of all such documents the evening of April 17, 2008, no such documents were ever sent by Gilou to the Shahs or to their attorney.

27. On April 18, having failed to receive a complete set of the executed loan documents, the Shahs gave Wachovia notice of their decision to rescind the loan. A copy of such notice and letter of enclosure is attached hereto as Exhibit F.

28. Thereafter, on April 25, 2008, Wachovia gave notice to the Shahs that it was refusing to rescind the loan. A copy of such notice is attached hereto as Exhibit G.

29. Under the provisions of 15 U.S.C.A. § 1635(a) and 12 C.F.R. § 226.23, the Shahs are entitled to rescind the loan transaction.

30. Under the provisions of 15 U.S.C.A. § 1640(a)(2)(A), plaintiffs are entitled to damages from Wachovia and from its agents, Gilou and Shamou, in an as yet undetermined amount.

31. Under the provisions of 15 U.S.C.A. § 1640(a)(3), plaintiffs are entitled to recover the costs of this action together with reasonable attorney's fees as determined by the Court.

6

WHEREFORE, plaintiffs Paresh and Shobhana Shah request judgment for:

a.      Rescission of the loan transaction;

b.      All compensatory damages, including all payments made in connection with the loan;

c.      Attorney fees;

d.      Costs of suit;

e.      For such other and further relief as the court may deem just and proper.

## COUNT II
### (Consumer Fraud and Deceptive Practices Act as to Wachovia)

1-23.   The Shahs reallege paragraphs 1 through 23 of Count I of their Complaint as and for paragraphs 1 through 23 of Count II of their Complaint.

24.  Between March 1, 2008 and April 30, 2008, Wachovia, through its agents Gilou and Shamoun, engaged in certain deceptive acts, omissions, and false or fraudulent statements which were taken for the purpose of closing on a mortgage loan on the Property and for the purpose of obtaining fees and commissions in connection with such loan, including but not limited to the following:

a.      Changing the Truth-In-Lending Disclosure, including the APR and payment amounts, at the time of execution of the loan documents without disclosing such changes to Shah;

b.      Back-dating the loan documents to April 10, 2008 after execution by Shah;

c.      Failing to provide Shah with a Good Faith Estimate prior to or at the time of signing of the loan documents;

d.      Failing to accurately date the Notice of Right to Cancel at the signing of the loan documents;

7

e.    Inserting a false execution date on the Notice of Right to Cancel after the Notice was signed by Paresh Shah;

f.    Dating and notarizing the loan documents after signed by Paresh Shah and after the closing, and after delivery to Shah of purportedly executed copies of such loan documents without a date or a notary;

g.    Forging signatures and initials of Paresh Shah and Shobhana Shah to certain loan documents;

h.    Failing to provide 2 copies of the Notice of Right to Cancel to Shobhana Shah;

i.    Inserting false information in the Uniform Residential Loan Application;

j.    Failing to provide Paresh Shah with a complete copy of the loan documents signed by Shah on April 15, 2008;

k.    Falsifying the notary information on the loan documents;

l.    Switching out pages of the Settlement Statement after execution by Paresh Shah, without informing him and without his consent.

25.    All of the above actions of Gilou and Shamoun were taken within the course and scope of their agency and were taken for the benefit of Wachovia and for their own financial benefit.

26.    Between March 11, 2008 and March 16, 2008, Wachovia, through its agent Prism, engaged in certain deceptive acts, omissions, and false or fraudulent statements which were taken for the purpose of closing on a mortgage loan on the Property and for the purpose of obtaining fees and commissions in connection with such loan, including but not limited to the following:

a.    Falsifying the date and location of the closing;

b.    Back-dating certain loan documents to April 11, 2008 after execution by Shah;

c.    Falsely representing that the closing on the loan took place on April 11,

8

2008, and that both of the Shahs were present; ;

    d.    Falsely representing that the Shahs had signed the loan documents in the presence of a closing officer of Prism Title;

    e.    Falsely representing that it had delivered two copies of properly signed and dated copies of the Notice of Right to Cancel to each of the Shahs;

    f.    Falsely representing that it had followed the lender instructions for the dating and notarization of documents;

    g.    Falsely representing that Shobhana Shah had signed the loan documents, or that it had received a certified copy of a Special Power of Attorney for her;

    h.    Failing to ensure that the correct dates on the Notice of Right to Cancel were inserted by the Shahs;

    i.    Disbursing the loan funds when the loan documents had expired according to their dates;

    j.    Making changes to and switching out pages of the Settlement Statement after execution by Paresh Shah, without informing him and without his consent.

27. The above deceptive acts and practices by Wachovia were taken in the course its mortgage loan business, involving trade and commerce.

28. The above deceptive acts and practices by Wachovia were taken with the intention of inducing the Shahs to borrow from Wachovia so as to bind the Shahs to unfavorable and oppressive loan terms, to allow Wachovia to collect fees and commissions in connection with such loan, and to deny the Shahs their statutory right of rescission.

29. As a result of the above deceptive acts and practices by Wachovia, Paresh Shah executed the loan documents in question, and, in attempting to subsequently rescind the transaction, was denied his right of rescission.

9

30. As a result of the above deceptive acts and practices by Wachovia, the Shahs remain obligated on the Note and Mortgage with Wachovia in the amount of $555,000, without a right to prepay without substantial penalty and under a loan scheme designed to increase the loan principal over time. The Shahs have also incurred substantial attorney fees and costs in response to the above deceptive acts and practices.

31. At all relevant times herein, there was in force and effect the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 et.seq.

32. The above deceptive acts and omissions of Wachovia were in violation of the provisions of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 et.seq.

33. The acts and omissions of Wachovia were outrageous, malicious, and were done intentionally with evil motive, with the express intent of taking advantage of the Shahs and so bind the Shahs to unfavorable and oppressive loan terms, to allow Wachovia to collect fees and commissions in connection with such loan, and to deny the Shahs their statutory right of rescission. As a result, the Shahs are entitled to trebling of damages, punitive damages and attorney fees under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 et.seq.

WHEREFORE, Plaintiffs Paresh and Shobhana Shah pray for judgment in their favor and awarding them:

(a) Compensatory damages for all amounts paid out of pocket towards the loan with Wachovia, any judgments relating to such loan, and any other losses or expenses which they may incur relating to the Property, with a trebling of such damages;

(b) Punitive damages as to Defendant Wachovia in an amount not less than the underlying loan amount, or $555,000.00;

10

(c) Attorney fees and costs;

(d) Such other and further relief as the Court deems just and proper.

## COUNT III
**(Consumer Fraud and Deceptive Practices Act as to Gilou and Shamoun)**

1-23.   The Shahs reallege paragraphs 1 through 23 of Count I of their Complaint as and

for paragraphs 1 through 23 of Count III of their Complaint.

24.   Between March 1, 2008 and April 30, 2008, Gilou and Shamoun engaged in certain

deceptive acts, omissions, and false or fraudulent statements which were taken for the purpose of

closing on a mortgage loan on the Property and for the purpose of obtaining fees and

commissions in connection with such loan, including but not limited to the following:

a.   Changing the Truth-In-Lending Disclosure, including the APR and payment amounts, at the time of execution of the loan documents without disclosing such changes to Shah;

b.   Back-dating the loan documents to April 10, 2008 after execution by Shah;

c.   Failing to provide Shah with a Good Faith Estimate prior to or at the time of signing of the loan documents;

d.   Failing to accurately date the Notice of Right to Cancel at the signing of the loan documents;

e.   Inserting a false execution date on the Notice of Right to Cancel after the Notice was signed by Paresh Shah;

f.   Dating and notarizing the loan documents after signed by Paresh Shah and after the closing, and after delivery to Shah of purportedly executed copies of such loan documents without a date or a notary;

g.   Forging signatures and initials of Paresh Shah and Shobhana Shah to certain loan documents;

11

h.  Failing to provide 2 copies of the Notice of Right to Cancel to Shobhana Shah;

i.  Inserting false information in the Uniform Residential Loan Application;

j.  Failing to provide Paresh Shah with a complete copy of the loan documents signed by Shah on April 15, 2008;

k.  Falsifying the notary information on the loan documents;

l.  Switching out pages of the Settlement Statement after execution by Paresh Shah, without informing him and without his consent.

25.  All of the above actions of Gilou and Shamoun were taken for their own financial benefit, and so as to allow them to collect broker fees in connection with the loan in excess of $14,000.

26.  The above deceptive acts and practices by Gilou and Shamoun were taken in the course their business as mortgage loan brokers, involving trade and commerce.

27.  The above deceptive acts and practices by Gilou and Shamoun were taken with the intention of inducing the Shahs to borrow from Wachovia so as to bind the Shahs to unfavorable and oppressive loan terms, to allow Gilou and Shamoun to collect fees and commissions in connection with such loan, and to deny the Shahs their statutory right of rescission.

28.  As a result of the above deceptive acts and practices by Gilou and Shamoun, Paresh Shah executed the loan documents in question, and, in attempting to subsequently rescind the transaction, was denied his right of rescission.

29.  As a result of the above deceptive acts and practices by Gilou and Shamoun, the Shahs remain obligated on the Note and Mortgage with Wachovia in the amount of $555,000, without a right to prepay without substantial penalty and under a loan scheme designed to

12

increase the loan principal over time.  The Shahs have also incurred substantial attorney fees and costs in response to the above deceptive acts and practices.

30.  At all relevant times herein, there was in force and effect the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 et.seq.

31.  The above deceptive acts and omissions of Gilou and Shamoun were in violation of the provisions of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 et.seq.

32  The acts and omissions of Gilou and Shamoun were outrageous, malicious, and were done intentionally with evil motive, with the express intent of taking advantage of the Shahs and so  bind the Shahs to unfavorable and oppressive loan terms, to allow Wachovia to collect fees and commissions in connection with such loan, and to deny the Shahs their statutory right of rescission. As a result, the Shahs are entitled to trebling of damages, punitive damages and attorney fees under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 et.seq.

WHEREFORE, Plaintiffs Paresh and Shobhana Shah pray for judgment in their favor and awarding them:

(a) Compensatory damages for all amounts paid out of pocket towards the loan with Wachovia, any judgments relating to such loan, and any other losses or expenses which they may incur relating to the Property, with a trebling of such damages;

(b) Punitive damages as to Defendants Gilou and Shamoun in an amount not less than the underlying loan amount, or $555,000.00;

(c) Attorney fees and costs;

(d) Such other and further relief as the Court deems just and proper.

13

## COUNT IV
### (Fraud as to Gilou and Shamoun)

1-23.   The Shahs reallege paragraphs 1 through 23 of Count I of their Complaint

as and for paragraphs 1 through 23 of Count IV of their Complaint.

24.   Between March 1, 2008 and April 30, 2008, Gilou and Shamoun engaged in certain

deceptive acts, omissions, and false or fraudulent statements, including but not limited to the

following:

    a.    Changing the Truth-In-Lending Disclosure, including the APR and payment amounts, at the time of execution of the loan documents without disclosing such changes to Shah;

    b.    Back-dating the loan documents to April 10, 2008 after execution by Shah;

    c.    Failing to provide Shah with a Good Faith Estimate prior to or at the time of signing of the loan documents;

    d.    Failing to accurately date the Notice of Right to Cancel at the signing of the loan documents;

    e.    Inserting a false execution date on the Notice of Right to Cancel after the Notice was signed by Paresh Shah;

    f.    Dating and notarizing the loan documents after signed by Paresh Shah and after the closing, and after delivery to Shah of purportedly executed copies of such loan documents without a date or a notary;

    g.    Forging signatures and initials of Paresh Shah and Shobhana Shah to certain loan documents;

    h.    Failing to provide 2 copies of the Notice of Right to Cancel to Shobhana Shah;

    i.    Inserting false information in the Uniform Residential Loan Application;

    j.    Failing to provide Paresh Shah with a complete copy of the loan

14

documents signed by Shah on April 15, 2008;

k.    Falsifying the notary information on the loan documents;

l.    Switching out pages of the Settlement Statement after execution
     by Paresh Shah, without informing him and without his consent.

25.  The above representations, statements, omissions and deceptions of Gilou and

Shamoun were false and known to be false when made, were taken for their own financial

benefit, and so as to allow them to collect broker fees in connection with the loan in excess of

$14,000.

26.  The above representations, statements, omissions and deceptions of Gilou and

Shamoun were false and known to be false when made, were taken with the intention of inducing

the Shahs to borrow from Wachovia so as to bind the Shahs to unfavorable and oppressive loan

terms, to allow Gilou and Shamoun to collect fees and commissions in connection with such

loan, and to deny the Shahs their statutory right of rescission.

27.  As a result of the false or fraudulent representations, statements, and omissions of

Gilou and Shamoun, the Shahs remain obligated on the Note and Mortgage with Wachovia in

the amount of $555,000, without a right to prepay without substantial penalty and under a loan

scheme designed to increase the loan principal over time.  The Shahs have also incurred

substantial attorney fees and costs in response to the above deceptive acts and practices.

WHEREFORE, Plaintiffs Paresh and Shobhana Shah pray for judgment in their favor and

awarding them:

(a) Compensatory damages for all amounts paid out of pocket towards the loan
with Wachovia, any judgments relating to such loan, and any other losses or expenses
which they may incur relating to the Property, with a trebling of such damages;

15

(b) Punitive damages as to Defendants Gilou and Shamoun in an amount not less than the underlying loan amount, or $555,000.00;

(c) Attorney fees and costs;

(d) Such other and further relief as the Court deems just and proper.

## COUNT V
**(Consumer Fraud and Deceptive Practices Act as to Prism)**

1-23. The Shahs reallege paragraphs 1 through 23 of Count I of their Complaint as and for paragraphs 1 through 23 of Count II of their Complaint.

24. Between March 11, 2008 and April 30, 2008, Prism engaged in certain deceptive acts, omissions, and false or fraudulent statements which were taken for the purpose of closing on a mortgage loan on the Property and for the purpose of obtaining fees and commissions in connection with such loan, including but not limited to the following:

a.  Falsifying the date and location of the closing;

b.  Back-dating certain loan documents to April 11, 2008 after execution by Shah;

c.  Falsely representing to Wachovia that the closing on the loan took place on April 11, 2008, and that both of the Shahs were present; ;

d.  Falsely representing to Wachovia that the Shahs had signed the loan documents in the presence of a closing officer of Prism Title;

e.  Falsely representing to Wachovia that it had delivered two copies of properly signed and dated copies of the Notice of Right to Cancel to each of the Shahs;

f.  Falsely representing to Wachovia that it had followed the lender instructions for the dating and notarization of documents;

g.  Falsely representing that Shobhana Shah had signed the loan documents,

16

or that it had received a certified copy of a Special Power of Attorney for her;

h.     Failing to ensure that the correct dates on the Notice of Right to Cancel were inserted by the Shahs;

i.     Disbursing the loan funds when the loan documents had expired according to their dates;

j.     Making changes to and switching out pages of the Settlement Statement after execution by Paresh Shah, without informing him and without his consent.

25. All of the above actions of Prism were taken for its own financial benefit, and so as to allow it to collect certain fees in connection with the loan, and to maintain certain business relationships.

26. The above deceptive acts and practices by Prism were taken in the course its business as a title insurance company, involving trade and commerce.

27. The above deceptive acts and practices by Prism were taken with the intention of allowing the closing to proceed, allowing Prism to collect certain fees and commissions in connection with such loan, and to deny the Shahs their statutory right of rescission.

28. As a result of the above deceptive acts and practices by Prism, the loan proceeds were improperly disbursed before the expiration of the statutory cancellation period, and Paresh Shah was denied his right of rescission.

29. As a result of the above deceptive acts and practices by Prism, the Shahs remain obligated on the Note and Mortgage with Wachovia in the amount of $555,000, without a right to prepay without substantial penalty and under a loan scheme designed to increase the loan principal over time. The Shahs have also incurred substantial attorney fees and costs in response

17

to the above deceptive acts and practices.

30. At all relevant times herein, there was in force and effect the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 et.seq.

31. The above deceptive acts and omissions of Prism were in violation of the provisions of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 et.seq.

32 The acts and omissions of Prism were outrageous, malicious, and were done intentionally with evil motive, with the express intent of taking advantage of the Shahs and so bind the Shahs to unfavorable and oppressive loan terms, to allow Prism to collect fees and commissions in connection with such loan, and to deny the Shahs their statutory right of rescission. As a result, the Shahs are entitled to trebling of damages, punitive damages and attorney fees under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 et.seq.

WHEREFORE, Plaintiffs Paresh and Shobhana Shah pray for judgment in their favor and awarding them:

(a) Compensatory damages for all amounts paid out of pocket towards the loan with Wachovia, any judgments relating to such loan, and any other losses or expenses which they may incur relating to the Property, with a trebling of such damages;

(b) Punitive damages as to Defendants Gilou and Shamoun in an amount not less than the underlying loan amount, or $555,000.00;

(c) Attorney fees and costs;

(d) Such other and further relief as the Court deems just and proper.

18

## COUNT VI
### (Violation of Illinois Title Insurance Act, Prism)

1-23.    The Shahs reallege paragraphs 1 through 23 of Count I of their Complaint as and for paragraphs 1 through 23 of Count II of their Complaint.

24.  At all relevant times herein, Prism Title Company was retained to act as the closing and escrow agent for the Shahs, and received compensation from the Shahs for rendering services as the title agent in the refinance of the Shahs mortgage.

25.  At all relevant times herein, there was in force and effect the Illinois Title Insurance Act, 215 ILCS 155/1 et.seq.

26.  Prism violated Section 21(a) of the Illinois Title Insurance Act by certain misrepresentations and deceptive acts and omissions, including but not limited to the following:

    a.    Falsifying the date and location of the closing;

    b.    Back-dating certain loan documents to April 11, 2008 after execution by Shah;

    c.    Falsely representing to Wachovia that the closing on the loan took place on April 11, 2008, and that both of the Shahs were present; ;

    d.    Falsely representing to Wachovia that the Shahs had signed the loan documents in the presence of a closing officer of Prism Title;

    e.    Falsely representing to Wachovia that it had delivered two copies of properly signed and dated copies of the Notice of Right to Cancel to each of the Shahs;

    f.    Falsely representing to Wachovia that it had followed the lender instructions for the dating and notarization of documents;

    g.    Falsely representing that Shobhana Shah had signed the loan documents, or that it had received a certified copy of a Special Power of Attorney for her;

19

      h.     Failing to ensure that the correct dates on the Notice of Right to Cancel were inserted by the Shahs;

      i.     Disbursing the loan funds when the loan documents had expired according to their dates;

      j.     Making changes to and switching out pages of the Settlement Statement after execution by Paresh Shah, without informing him and without his consent.

27. As a result of the above representations, acts, and omissions of Prism, the Shahs have been denied their statutory right to rescind the loan transaction, remain obligated on the Note and Mortgage with Wachovia in the amount of $555,000, without a right to prepay without substantial penalty and under a loan scheme designed to increase the loan principal over time. The Shahs have also incurred substantial attorney fees and costs in response to the above deceptive acts and practices.

28. Under the Illinois Title Insurance Act, the Shahs are entitled to recover their costs and attorney fees.

WHEREFORE, Plaintiffs Paresh and Shobhana Shah pray for judgment in their favor and awarding them:

     (a) Compensatory damages for all amounts paid out of pocket towards the loan with Wachovia, any judgments relating to such loan, and any other losses or expenses which they may incur relating to the Property, with a trebling of such damages;

     (b) Punitive damages as to Defendant Prism in an amount not less than the underlying loan amount, or $555,000.00;

     (c) Attorney fees and costs;

     (d) Such other and further relief as the Court deems just and proper.

20

PARESH SHAH and SHOBHANA SHAH

BY: _____
    One of their attorneys

Thomas A. Appel
Timothy M. Kelly
Kevin P. O'Flaherty
APPEL & KELLY, LTD. #42088
18607 Torrence Avenue - Suite 2A
Lansing, Illinois  60438
708-474-8800

21

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | | | |
|---|---|---|---|
| Applicants: | PARESH SHAH | Prepared By: | THE EQUITY NETWORK |
| Property Address: | 9733 LAUREL CT Munster, IN 46321 | | |
| Application No: | SHAH1 | Date Prepared: 03/25/2008 | |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| 8.466 % | $ 811,389.13 | $ 655,000.00 | $ 1,466,389.13 |

☐ **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit
**PAYMENTS:** Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: | Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: | Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning: |
|---|---|---|---|---|---|---|---|---|
| 120 | 2,339.90 | | | | | | | |
| 239 | 4,939.99 | | | | | | | |
| 1 | 4,943.62 | | | | | | | |

☐ **DEMAND FEATURE:** This obligation has a demand feature.
☑ **VARIABLE RATE FEATURE:** This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.

**CREDIT LIFE/CREDIT DISABILITY:** Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature | |
|---|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

**INSURANCE:** The following insurance is required to obtain credit:
☐ Credit life insurance  ☐ Credit disability  ☐ Property insurance  ☐ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☐ If you purchase ☐ property ☐ flood insurance from creditor you will pay $ ___ for a one year term.
**SECURITY:** You are giving a security interest in: 9733 LAUREL CT, Munster IN 46321
☐ The goods or property being purchased  ☐ Real property you already own.
**FILING FEES:** $
**LATE CHARGE:** If a payment is more than ___ days late, you will be charged ___ % of the payment.
**PREPAYMENT:** If you pay off early, you
☐ may ☐ will not have to pay a penalty.
☐ may ☐ will not be entitled to a refund of part of the finance charge.
**ASSUMPTION:** Someone buying your property
☐ may ☐ may, subject to conditions ☐ may not assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
☐ * means an estimate     ☐ all dates and numerical disclosures except the late payment disclosures are estimates.

** NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

| | | | |
|---|---|---|---|
| PARESH SHAH | (Applicant) (Date) | | (Applicant) (Date) |
| | (Applicant) (Date) | | (Applicant) (Date) |
| | (Lender) (Date) | | |

Calyx Form - tit.frm (02/95)

PAGE 02    7734270066    04/12/2008 17:25

EXHIBIT
A

## Amortization Schedule

*Amortization Schedule For:*   PARESH SHAH

*Property Address:*   9733 LAUREL CT Munster, IN 46321

*Prepared For:*

*Provided By:*   THE EQUITY NETWORK

Loan Program: *OPTION ARM*

| Loan Amount | $ 555,000 | Buydown: | Rate | Term |
|---|---|---|---|---|
| Interest Rate | 3.000 % | | | |
| Term/Due In | 360/360 months | | | |
| 1st PMT Date | | | | |
| Qual Rate | 3.000 % | | | |
| APR | 4.398 % | | | |

| Rate Adjustment | | Payment Adjustment | |
|---|---|---|---|
| First Adj. Cap | 3.500 % | Initial Payment Rate | 3.000 % Start Rate for 120 months |
| First Change | 120 months | First Adj. Cap | 7.500 % |
| Adjust Cap | 2.000 % | First Change | 12 months |
| Adjust Period | 240 months | Recast Period | |
| Life Cap | 9.990 % | Recast Stop | |
| Margin | | Max Balance | |
| Index | | Interest Only | |
| Rounding | | GPM | |

Summary

| No | Pmt Date | Int Rate | Monthly Payment | Principal Paid | Interest Paid | Mtg Insurance | Balance |
|---|---|---|---|---|---|---|---|
| 120 | | 3.000 | 2,339.90 | 133,089.71 | 147,998.29 | | 421,910.29 |
| 12 | | 6.500 | 2,515.39 | 2,844.25 | 27,340.43 | | 419,066.04 |
| 12 | | 6.500 | 2,704.04 | 5,367.21 | 27,081.27 | | 413,698.83 |
| 12 | | 6.500 | 2,906.84 | 8,234.09 | 26,847.99 | | 405,464.74 |
| 12 | | 6.500 | 3,124.85 | 11,481.01 | 26,017.19 | | 393,983.73 |
| 191 | | 6.500 | 3,305.82 | 390,695.75 | 240,715.87 | | 3,287.98 |
| 1 | | 6.500 | 3,305.79 | 3,287.98 | 17.81 | | 0.00 |
| TOTAL | | | 1,050,518.85 | 555,000.00 | 495,518.85 | | 0.00 |

CALYX Form Amortz.frm 10/98

EXHIBIT

B

04/15/2008   14:42   7734278058     PAGE   04

## Yearly Schedule

| No | Pmt Date | Int Rate | Monthly Payment | Principal Paid | Interest Paid | Mtg Insurance | Balance |
|----|----------|----------|-----------------|----------------|---------------|---------------|---------|
| 12 | | 3.000 | 2,338.90 | 11,587.26 | 16,491.54 | | 543,412.74 |
| 12 | | 3.000 | 2,339.90 | 11,939.71 | 16,139.09 | | 531,473.03 |
| 12 | | 3.000 | 2,339.90 | 12,302.87 | 15,775.93 | | 519,170.16 |
| 12 | | 3.000 | 2,339.90 | 12,677.05 | 15,401.75 | | 506,493.11 |
| 12 | | 3.000 | 2,339.90 | 13,062.64 | 15,016.16 | | 493,430.47 |
| 12 | | 3.000 | 2,339.90 | 13,459.95 | 14,618.85 | | 479,970.52 |
| 12 | | 3.000 | 2,339.90 | 13,869.34 | 14,209.46 | | 466,101.18 |
| 12 | | 3.000 | 2,339.90 | 14,291.22 | 13,787.58 | | 451,809.96 |
| 12 | | 3.000 | 2,339.90 | 14,725.89 | 13,352.91 | | 437,084.07 |
| 12 | | 6.500 | 2,515.39 | 15,173.78 | 12,905.02 | | 421,910.29 |
| 12 | | 6.500 | 2,704.04 | 2,844.25 | 27,340.43 | | 419,066.04 |
| 12 | | 6.500 | 2,906.64 | 5,367.21 | 27,081.27 | | 413,698.83 |
| 12 | | 6.500 | 3,124.85 | 8,234.09 | 26,847.99 | | 405,464.74 |
| 12 | | 6.500 | 3,305.82 | 11,481.01 | 26,017.19 | | 393,983.73 |
| 12 | | 6.500 | 3,305.82 | 14,487.46 | 25,182.38 | | 379,496.27 |
| 12 | | 6.500 | 3,305.82 | 15,457.71 | 24,212.13 | | 364,038.56 |
| 12 | | 6.500 | 3,305.82 | 16,492.93 | 23,176.91 | | 347,545.63 |
| 12 | | 6.500 | 3,305.82 | 17,597.49 | 22,072.35 | | 329,948.14 |
| 12 | | 6.500 | 3,305.82 | 18,776.05 | 20,893.79 | | 311,172.09 |
| 12 | | 6.500 | 3,305.82 | 20,033.51 | 19,536.33 | | 291,138.58 |
| 12 | | 6.500 | 3,305.82 | 21,375.18 | 18,294.66 | | 269,763.40 |
| 12 | | 6.500 | 3,305.82 | 22,806.71 | 16,863.13 | | 246,956.69 |
| 12 | | 6.500 | 3,305.82 | 24,334.12 | 15,335.72 | | 222,622.57 |
| 12 | | 6.500 | 3,305.82 | 25,963.84 | 13,706.00 | | 196,658.73 |
| 12 | | 6.500 | 3,305.82 | 27,702.57 | 11,967.17 | | 168,956.06 |
| 12 | | 6.500 | 3,305.82 | 29,557.95 | 10,111.88 | | 139,398.10 |
| 12 | | 6.500 | 3,305.82 | 31,537.51 | 8,132.33 | | 107,860.59 |
| 12 | | 6.500 | 3,305.82 | 33,649.65 | 6,020.19 | | 74,210.94 |
| 11 | | 5.500 | 3,305.82 | 35,903.23 | 3,766.61 | | 38,307.71 |
| 1 | | 6.500 | 3,305.82 | 35,019.73 | 1,344.29 | | 3,287.98 |
| | | | 3,305.79 | 3,287.98 | 17.81 | | 0.00 |
| TOTAL | | | 1,050,518.85 | 555,000.00 | 495,518.85 | | |

## Monthly Payment

| No | Pmt Date | Int Rate | Monthly Schedule | Principal Paid | Interest Paid | Mtg Insurance | Balance |
|---|---|---|---|---|---|---|---|
| 1 | | 3.000 | 2,339.90 | 952.40 | 1,387.50 | | 554,047.60 |
| 2 | | 3.000 | 2,339.90 | 954.78 | 1,385.12 | | 553,092.82 |
| 3 | | 3.000 | 2,339.90 | 957.17 | 1,382.73 | | 552,135.65 |
| 4 | | 3.000 | 2,339.90 | 959.56 | 1,380.34 | | 551,176.09 |
| 5 | | 3.000 | 2,339.90 | 961.96 | 1,377.94 | | 550,214.13 |
| 6 | | 3.000 | 2,339.90 | 964.36 | 1,375.54 | | 549,249.77 |
| 7 | | 3.000 | 2,339.90 | 966.78 | 1,373.54 | | 548,282.99 |
| 8 | | 3.000 | 2,339.90 | 969.19 | 1,370.71 | | 547,313.80 |
| 9 | | 3.000 | 2,339.90 | 971.62 | 1,368.28 | | 546,342.18 |
| 10 | | 3.000 | 2,339.90 | 974.04 | 1,365.86 | | 545,368.14 |
| 11 | | 3.000 | 2,339.90 | 976.48 | 1,363.42 | | 544,391.66 |
| 12 | | 3.000 | 2,339.90 | 978.92 | 1,360.98 | | 543,412.74 |
| Sub Total | | | 28,078.80 | 11,597.26 | 16,481.54 | | |
| 13 | | 3.000 | 2,339.90 | 981.37 | 1,358.53 | | 542,431.37 |
| 14 | | 3.000 | 2,339.90 | 983.82 | 1,356.08 | | 541,447.55 |
| 15 | | 3.000 | 2,339.90 | 986.28 | 1,353.62 | | 540,461.27 |
| 16 | | 3.000 | 2,339.90 | 988.75 | 1,351.15 | | 539,472.52 |
| 17 | | 3.000 | 2,339.90 | 991.22 | 1,348.68 | | 538,481.30 |
| 18 | | 3.000 | 2,339.90 | 993.70 | 1,346.20 | | 537,487.60 |
| 19 | | 3.000 | 2,339.90 | 996.18 | 1,343.72 | | 536,491.42 |
| 20 | | 3.000 | 2,339.90 | 998.67 | 1,341.23 | | 535,492.75 |
| 21 | | 3.000 | 2,339.90 | 1,001.17 | 1,338.73 | | 534,491.58 |
| 22 | | 3.000 | 2,339.90 | 1,003.67 | 1,336.23 | | 533,487.91 |
| 23 | | 3.000 | 2,339.90 | 1,006.18 | 1,333.72 | | 532,481.73 |
| 24 | | 3.000 | 2,339.90 | 1,008.70 | 1,331.20 | | 531,473.03 |
| Sub Total | | | 28,078.80 | 11,939.71 | 16,139.09 | | |
| 25 | | 3.000 | 2,339.90 | 1,011.22 | 1,328.68 | | 530,461.81 |
| 26 | | 3.000 | 2,339.90 | 1,013.75 | 1,326.15 | | 529,448.06 |
| 27 | | 3.000 | 2,339.90 | 1,016.28 | 1,323.62 | | 528,431.78 |
| 28 | | 3.000 | 2,339.90 | 1,018.82 | 1,321.08 | | 527,412.96 |
| 29 | | 3.000 | 2,339.90 | 1,021.37 | 1,318.53 | | 526,391.59 |
| 30 | | 3.000 | 2,339.90 | 1,023.92 | 1,315.98 | | 525,367.67 |
| 31 | | 3.000 | 2,339.90 | 1,026.48 | 1,313.42 | | 524,341.19 |
| 32 | | 3.000 | 2,339.90 | 1,029.05 | 1,310.85 | | 523,312.14 |
| 33 | | 3.000 | 2,339.90 | 1,031.62 | 1,308.28 | | 522,280.52 |
| 34 | | 3.000 | 2,339.90 | 1,034.20 | 1,305.70 | | 521,246.32 |
| 35 | | 3.000 | 2,339.90 | 1,036.78 | 1,303.12 | | 520,209.54 |
| 36 | | 3.000 | 2,339.90 | 1,039.38 | 1,300.52 | | 519,170.16 |
| Sub Total | | | 28,078.80 | 12,302.87 | 15,775.93 | | |
| 37 | | 3.000 | 2,339.90 | 1,041.97 | 1,297.93 | | 518,128.19 |
| 38 | | 3.000 | 2,339.90 | 1,044.58 | 1,295.32 | | 517,083.61 |
| 39 | | 3.000 | 2,339.90 | 1,047.19 | 1,292.71 | | 516,036.42 |
| 40 | | 3.000 | 2,339.90 | 1,049.81 | 1,290.09 | | 514,986.61 |
| 41 | | 3.000 | 2,339.90 | 1,052.43 | 1,287.47 | | 513,934.18 |
| 42 | | 3.000 | 2,339.90 | 1,055.06 | 1,284.84 | | 512,879.12 |
| 43 | | 3.000 | 2,339.90 | 1,057.70 | 1,282.20 | | 511,821.42 |
| 44 | | 3.000 | 2,339.90 | 1,060.35 | 1,279.55 | | 510,761.07 |
| 45 | | 3.000 | 2,339.90 | 1,063.00 | 1,276.90 | | 509,698.07 |
| 46 | | 3.000 | 2,339.90 | 1,065.65 | 1,274.25 | | 508,632.42 |
| 47 | | 3.000 | 2,339.90 | 1,068.32 | 1,271.58 | | 507,564.10 |
| 48 | | 3.000 | 2,339.90 | 1,070.99 | 1,268.91 | | 506,493.11 |
| Sub Total | | | 28,078.80 | 12,677.05 | 15,401.75 | | |

| No | Pmt Date | Int Rate | Monthly Schedule | Principal Paid | Interest Paid | Mtg Insurance | Balance |
|---|---|---|---|---|---|---|---|
| 49 | | 3.000 | 2,339.90 | 1,073.67 | 1,266.23 | | 505,419.44 |
| 50 | | 3.000 | 2,339.90 | 1,076.35 | 1,263.55 | | 504,343.09 |
| 51 | | 3.000 | 2,339.90 | 1,079.04 | 1,260.86 | | 503,264.05 |
| 52 | | 3.000 | 2,339.90 | 1,081.74 | 1,258.16 | | 502,182.31 |
| 53 | | 3.000 | 2,339.90 | 1,084.44 | 1,255.46 | | 501,097.87 |
| 54 | | 3.000 | 2,339.90 | 1,087.16 | 1,252.74 | | 500,010.71 |
| 55 | | 3.000 | 2,339.90 | 1,089.87 | 1,250.03 | | 498,920.84 |
| 56 | | 3.000 | 2,339.90 | 1,092.60 | 1,247.30 | | 497,828.24 |
| 57 | | 3.000 | 2,339.90 | 1,095.33 | 1,244.57 | | 496,732.91 |
| 58 | | 3.000 | 2,339.90 | 1,098.07 | 1,241.83 | | 495,634.84 |
| 59 | | 3.000 | 2,339.90 | 1,100.81 | 1,239.09 | | 494,534.03 |
| 60 | | 3.000 | 2,339.90 | 1,103.56 | 1,236.34 | | 493,430.47 |
| Sub Total | | | 28,078.80 | 13,082.64 | 15,016.16 | | |
| 61 | | 3.000 | 2,339.90 | 1,106.32 | 1,233.58 | | 492,324.15 |
| 62 | | 3.000 | 2,339.90 | 1,109.09 | 1,230.81 | | 491,215.06 |
| 63 | | 3.000 | 2,339.90 | 1,111.86 | 1,228.04 | | 490,103.20 |
| 64 | | 3.000 | 2,339.90 | 1,114.64 | 1,225.26 | | 488,988.56 |
| 65 | | 3.000 | 2,339.90 | 1,117.43 | 1,222.47 | | 487,871.13 |
| 66 | | 3.000 | 2,339.90 | 1,120.22 | 1,219.68 | | 486,750.91 |
| 67 | | 3.000 | 2,339.90 | 1,123.02 | 1,216.88 | | 485,627.89 |
| 68 | | 3.000 | 2,339.90 | 1,125.83 | 1,214.07 | | 484,502.06 |
| 69 | | 3.000 | 2,339.90 | 1,128.64 | 1,211.26 | | 483,373.42 |
| 70 | | 3.000 | 2,339.90 | 1,131.47 | 1,208.43 | | 482,241.95 |
| 71 | | 3.000 | 2,339.90 | 1,134.30 | 1,205.60 | | 481,107.65 |
| 72 | | 3.000 | 2,339.90 | 1,137.13 | 1,202.77 | | 479,970.52 |
| Sub Total | | | 28,078.80 | 13,459.95 | 14,618.85 | | |
| 73 | | 3.000 | 2,339.90 | 1,139.97 | 1,199.93 | | 478,830.55 |
| 74 | | 3.000 | 2,339.90 | 1,142.82 | 1,197.08 | | 477,687.73 |
| 75 | | 3.000 | 2,339.90 | 1,145.68 | 1,194.22 | | 476,542.05 |
| 76 | | 3.000 | 2,339.90 | 1,148.54 | 1,191.36 | | 475,393.51 |
| 77 | | 3.000 | 2,339.90 | 1,151.42 | 1,188.48 | | 474,242.09 |
| 78 | | 3.000 | 2,339.90 | 1,154.29 | 1,185.61 | | 473,087.80 |
| 79 | | 3.000 | 2,339.90 | 1,157.18 | 1,182.72 | | 471,930.62 |
| 80 | | 3.000 | 2,339.90 | 1,160.07 | 1,179.83 | | 470,770.55 |
| 81 | | 3.000 | 2,339.90 | 1,162.97 | 1,176.93 | | 469,607.58 |
| 82 | | 3.000 | 2,339.90 | 1,165.88 | 1,174.02 | | 468,441.70 |
| 83 | | 3.000 | 2,339.90 | 1,168.80 | 1,171.10 | | 467,272.90 |
| 84 | | 3.000 | 2,339.90 | 1,171.72 | 1,168.18 | | 466,101.18 |
| Sub Total | | | 28,078.80 | 13,869.34 | 14,209.46 | | |
| 85 | | 3.000 | 2,339.90 | 1,174.65 | 1,165.25 | | 464,926.53 |
| 86 | | 3.000 | 2,339.90 | 1,177.58 | 1,162.32 | | 463,748.95 |
| 87 | | 3.000 | 2,339.90 | 1,180.53 | 1,159.37 | | 462,568.42 |
| 88 | | 3.000 | 2,339.90 | 1,183.48 | 1,156.42 | | 461,384.94 |
| 89 | | 3.000 | 2,339.90 | 1,186.44 | 1,153.46 | | 460,198.50 |
| 90 | | 3.000 | 2,339.90 | 1,189.40 | 1,150.50 | | 459,009.10 |
| 91 | | 3.000 | 2,339.90 | 1,192.38 | 1,147.52 | | 457,816.72 |
| 92 | | 3.000 | 2,339.90 | 1,195.36 | 1,144.54 | | 456,621.36 |
| 93 | | 3.000 | 2,339.90 | 1,198.35 | 1,141.55 | | 455,423.01 |
| 94 | | 3.000 | 2,339.90 | 1,201.34 | 1,138.56 | | 454,221.67 |
| 95 | | 3.000 | 2,339.90 | 1,204.35 | 1,135.55 | | 453,017.32 |
| 96 | | 3.000 | 2,339.90 | 1,207.36 | 1,132.54 | | 451,809.96 |
| Sub Total | | | 28,078.80 | 14,291.22 | 13,787.58 | | |

| No | Pmt Date | Int Rate | Monthly Schedule | Principal Paid | Interest Paid | Mtg Insurance | Balance |
|---|---|---|---|---|---|---|---|
| 97 | | 3.000 | 2,339.90 | 1,210.38 | 1,129.52 | | 450,599.58 |
| 98 | | 3.000 | 2,339.90 | 1,213.40 | 1,126.50 | | 449,386.18 |
| 99 | | 3.000 | 2,339.90 | 1,216.43 | 1,123.47 | | 448,169.75 |
| 100 | | 3.000 | 2,339.90 | 1,219.48 | 1,120.42 | | 446,950.27 |
| 101 | | 3.000 | 2,339.90 | 1,222.52 | 1,117.38 | | 445,727.75 |
| 102 | | 3.000 | 2,339.90 | 1,225.58 | 1,114.32 | | 444,502.17 |
| 103 | | 3.000 | 2,339.90 | 1,228.64 | 1,111.26 | | 443,273.53 |
| 104 | | 3.000 | 2,339.90 | 1,231.72 | 1,108.18 | | 442,041.81 |
| 105 | | 3.000 | 2,339.90 | 1,234.80 | 1,105.10 | | 440,807.01 |
| 106 | | 3.000 | 2,339.90 | 1,237.88 | 1,102.02 | | 439,569.13 |
| 107 | | 3.000 | 2,339.90 | 1,240.98 | 1,098.92 | | 438,328.15 |
| 108 | | 3.000 | 2,339.90 | 1,244.08 | 1,095.82 | | 437,084.07 |
| Sub Total | | | 28,078.80 | 14,726.89 | 13,352.91 | | |
| 109 | | 3.000 | 2,339.90 | 1,247.19 | 1,092.71 | | 435,836.88 |
| 110 | | 3.000 | 2,339.90 | 1,250.31 | 1,089.59 | | 434,586.57 |
| 111 | | 3.000 | 2,339.90 | 1,253.43 | 1,086.47 | | 433,333.14 |
| 112 | | 3.000 | 2,339.90 | 1,256.57 | 1,083.33 | | 432,076.57 |
| 113 | | 3.000 | 2,339.90 | 1,259.71 | 1,080.19 | | 430,816.86 |
| 114 | | 3.000 | 2,339.90 | 1,262.86 | 1,077.04 | | 429,554.00 |
| 115 | | 3.000 | 2,339.90 | 1,266.01 | 1,073.89 | | 428,287.99 |
| 116 | | 3.000 | 2,339.90 | 1,269.18 | 1,070.72 | | 427,018.81 |
| 117 | | 3.000 | 2,339.90 | 1,272.35 | 1,067.55 | | 425,746.46 |
| 118 | | 3.000 | 2,339.90 | 1,275.53 | 1,064.37 | | 424,470.93 |
| 119 | | 3.000 | 2,339.90 | 1,278.72 | 1,061.18 | | 423,192.21 |
| 120 | | 3.000 | 2,339.90 | 1,281.92 | 1,057.98 | | 421,910.29 |
| Sub Total | | | 28,078.80 | 15,173.78 | 12,905.02 | | |
| 121 | | 6.500 | 2,515.39 | 230.04 | 2,285.35 | | 421,680.25 |
| 122 | | 6.500 | 2,515.39 | 231.29 | 2,284.10 | | 421,448.96 |
| 123 | | 6.500 | 2,515.39 | 232.54 | 2,282.85 | | 421,216.42 |
| 124 | | 6.500 | 2,515.39 | 233.80 | 2,281.59 | | 420,982.62 |
| 125 | | 6.500 | 2,515.39 | 235.07 | 2,280.32 | | 420,747.55 |
| 126 | | 6.500 | 2,515.39 | 236.34 | 2,279.05 | | 420,511.21 |
| 127 | | 6.500 | 2,515.39 | 237.62 | 2,277.77 | | 420,273.59 |
| 128 | | 6.500 | 2,515.39 | 238.91 | 2,276.48 | | 420,034.68 |
| 129 | | 6.500 | 2,515.39 | 240.20 | 2,275.19 | | 419,794.48 |
| 130 | | 6.500 | 2,515.39 | 241.50 | 2,273.89 | | 419,552.98 |
| 131 | | 6.500 | 2,515.39 | 242.81 | 2,272.58 | | 419,310.17 |
| 132 | | 6.500 | 2,515.39 | 244.13 | 2,271.26 | | 419,066.04 |
| Sub Total | | | 30,184.68 | 2,844.25 | 27,340.43 | | |
| 133 | | 6.500 | 2,704.04 | 434.10 | 2,269.94 | | 418,631.94 |
| 134 | | 6.500 | 2,704.04 | 436.45 | 2,267.59 | | 418,195.49 |
| 135 | | 6.500 | 2,704.04 | 438.81 | 2,265.23 | | 417,756.68 |
| 136 | | 6.500 | 2,704.04 | 441.19 | 2,262.85 | | 417,315.49 |
| 137 | | 6.500 | 2,704.04 | 443.58 | 2,260.46 | | 416,871.91 |
| 138 | | 6.500 | 2,704.04 | 445.98 | 2,258.05 | | 416,425.93 |
| 139 | | 6.500 | 2,704.04 | 448.40 | 2,255.64 | | 415,977.53 |
| 140 | | 6.500 | 2,704.04 | 450.83 | 2,253.21 | | 415,526.70 |
| 141 | | 6.500 | 2,704.04 | 453.27 | 2,250.77 | | 415,073.43 |
| 142 | | 6.500 | 2,704.04 | 455.73 | 2,248.31 | | 414,617.70 |
| 143 | | 6.500 | 2,704.04 | 459.19 | 2,245.85 | | 414,159.51 |
| 144 | | 6.500 | 2,704.04 | 460.68 | 2,243.36 | | 413,698.83 |
| Sub Total | | | 32,448.48 | 5,367.21 | 27,081.27 | | |

Page 4

| No | Pmt Date | Int Rate | Monthly Schedule | Principal Paid | Interest Paid | Mtg Insurance | Balance |
|---|---|---|---|---|---|---|---|
| 145 | | 6.500 | 2,906.84 | 665.97 | 2,240.87 | | 413,032.86 |
| 146 | | 6.500 | 2,906.84 | 669.58 | 2,237.26 | | 412,363.28 |
| 147 | | 6.500 | 2,906.84 | 673.21 | 2,233.63 | | 411,690.07 |
| 148 | | 6.500 | 2,906.84 | 676.85 | 2,229.99 | | 411,013.22 |
| 149 | | 6.500 | 2,906.84 | 680.52 | 2,226.32 | | 410,332.70 |
| 150 | | 6.500 | 2,906.84 | 684.20 | 2,222.64 | | 409,648.50 |
| 151 | | 6.500 | 2,906.84 | 687.91 | 2,218.93 | | 408,960.59 |
| 152 | | 6.500 | 2,906.84 | 691.64 | 2,215.20 | | 408,268.95 |
| 153 | | 6.500 | 2,906.84 | 695.38 | 2,211.46 | | 407,573.57 |
| 154 | | 6.500 | 2,906.84 | 699.15 | 2,207.69 | | 406,874.42 |
| 155 | | 6.500 | 2,906.84 | 702.94 | 2,203.90 | | 406,171.48 |
| 156 | | 6.500 | 2,906.84 | 706.74 | 2,200.10 | | 405,464.74 |
| Sub Total | | | 34,882.08 | 8,234.09 | 26,647.99 | | |
| 157 | | 6.500 | 3,124.86 | 928.59 | 2,196.27 | | 404,536.16 |
| 158 | | 6.500 | 3,124.85 | 933.61 | 2,191.24 | | 403,602.55 |
| 159 | | 6.500 | 3,124.85 | 938.67 | 2,186.18 | | 402,663.88 |
| 160 | | 6.500 | 3,124.85 | 943.75 | 2,181.10 | | 401,720.13 |
| 161 | | 6.500 | 3,124.85 | 948.87 | 2,175.98 | | 400,771.26 |
| 162 | | 6.500 | 3,124.85 | 954.01 | 2,170.84 | | 399,817.25 |
| 163 | | 6.500 | 3,124.85 | 959.17 | 2,165.68 | | 398,858.08 |
| 164 | | 6.500 | 3,124.85 | 964.37 | 2,160.48 | | 397,893.71 |
| 165 | | 6.500 | 3,124.85 | 969.59 | 2,155.26 | | 396,924.12 |
| 166 | | 6.500 | 3,124.85 | 974.84 | 2,150.01 | | 395,949.28 |
| 167 | | 6.500 | 3,124.85 | 980.12 | 2,144.73 | | 394,969.16 |
| 168 | | 6.500 | 3,124.85 | 985.43 | 2,139.42 | | 393,983.73 |
| Sub Total | | | 37,498.20 | 11,481.01 | 26,017.19 | | |
| 169 | | 6.500 | 3,305.82 | 1,171.74 | 2,134.08 | | 392,811.99 |
| 170 | | 6.500 | 3,305.82 | 1,178.09 | 2,127.73 | | 391,633.90 |
| 171 | | 6.500 | 3,305.82 | 1,184.47 | 2,121.35 | | 390,449.43 |
| 172 | | 6.500 | 3,305.82 | 1,190.89 | 2,114.93 | | 389,258.54 |
| 173 | | 6.500 | 3,305.82 | 1,197.34 | 2,108.48 | | 388,061.20 |
| 174 | | 6.500 | 3,305.82 | 1,203.82 | 2,102.00 | | 386,857.38 |
| 175 | | 6.500 | 3,305.82 | 1,210.34 | 2,095.48 | | 385,647.04 |
| 176 | | 6.500 | 3,305.82 | 1,216.90 | 2,088.92 | | 384,430.14 |
| 177 | | 6.500 | 3,305.82 | 1,223.49 | 2,082.33 | | 383,206.65 |
| 178 | | 6.500 | 3,305.82 | 1,230.12 | 2,075.70 | | 381,976.53 |
| 179 | | 6.500 | 3,305.82 | 1,236.78 | 2,069.04 | | 380,739.75 |
| 180 | | 6.500 | 3,305.82 | 1,243.48 | 2,062.34 | | 379,496.27 |
| Sub Total | | | 39,669.84 | 14,487.46 | 25,182.38 | | |
| 181 | | 6.500 | 3,305.82 | 1,250.22 | 2,055.60 | | 378,246.05 |
| 182 | | 6.500 | 3,305.82 | 1,256.99 | 2,048.83 | | 376,989.06 |
| 183 | | 6.500 | 3,305.82 | 1,263.80 | 2,042.02 | | 375,725.26 |
| 184 | | 6.500 | 3,305.82 | 1,270.64 | 2,035.18 | | 374,454.62 |
| 185 | | 6.500 | 3,305.82 | 1,277.52 | 2,028.30 | | 373,177.10 |
| 186 | | 6.500 | 3,305.82 | 1,284.44 | 2,021.38 | | 371,892.66 |
| 187 | | 6.500 | 3,305.82 | 1,291.40 | 2,014.42 | | 370,601.26 |
| 188 | | 6.500 | 3,305.82 | 1,298.40 | 2,007.42 | | 369,302.86 |
| 189 | | 6.500 | 3,305.82 | 1,305.43 | 2,000.39 | | 367,997.43 |
| 190 | | 6.500 | 3,305.82 | 1,312.50 | 1,993.32 | | 366,684.93 |
| 191 | | 6.500 | 3,305.82 | 1,319.61 | 1,986.21 | | 365,365.32 |
| 192 | | 6.500 | 3,305.82 | 1,326.76 | 1,979.06 | | 364,038.56 |
| Sub Total | | | 39,669.84 | 15,457.71 | 24,212.13 | | |

| No | Pmt Date | Int Rate | Monthly Schedule | Principal Paid | Interest Paid | Mtg Insurance | Balance |
|---|---|---|---|---|---|---|---|
| 193 | | 6.500 | 3,305.82 | 1,333.94 | 1,971.88 | | 362,704.62 |
| 194 | | 6.500 | 3,305.82 | 1,341.17 | 1,964.65 | | 361,363.45 |
| 195 | | 6.500 | 3,305.82 | 1,348.43 | 1,957.39 | | 360,015.02 |
| 196 | | 6.500 | 3,305.82 | 1,355.74 | 1,950.08 | | 358,659.28 |
| 197 | | 6.500 | 3,305.82 | 1,363.08 | 1,942.74 | | 357,296.20 |
| 198 | | 6.500 | 3,305.82 | 1,370.47 | 1,935.35 | | 355,925.73 |
| 199 | | 6.500 | 3,305.82 | 1,377.89 | 1,927.93 | | 354,547.84 |
| 200 | | 6.500 | 3,305.82 | 1,385.35 | 1,920.47 | | 353,162.49 |
| 201 | | 6.500 | 3,305.82 | 1,392.86 | 1,912.96 | | 351,769.63 |
| 202 | | 6.500 | 3,305.82 | 1,400.40 | 1,905.42 | | 350,369.23 |
| 203 | | 6.500 | 3,305.82 | 1,407.99 | 1,897.83 | | 348,961.24 |
| 204 | | 6.500 | 3,305.82 | 1,415.61 | 1,890.21 | | 347,545.63 |
| Sub Total | | | 39,669.84 | 16,492.93 | 23,176.91 | | |
| 205 | | 6.500 | 3,305.82 | 1,423.28 | 1,882.54 | | 346,122.35 |
| 206 | | 6.500 | 3,305.82 | 1,430.99 | 1,874.83 | | 344,691.36 |
| 207 | | 6.500 | 3,305.82 | 1,438.74 | 1,867.08 | | 343,252.62 |
| 208 | | 6.500 | 3,305.82 | 1,446.53 | 1,859.29 | | 341,806.09 |
| 209 | | 6.500 | 3,305.82 | 1,454.37 | 1,851.45 | | 340,351.72 |
| 210 | | 6.500 | 3,305.82 | 1,462.25 | 1,843.57 | | 338,889.47 |
| 211 | | 6.500 | 3,305.82 | 1,470.17 | 1,835.65 | | 337,419.30 |
| 212 | | 6.500 | 3,305.82 | 1,478.13 | 1,827.69 | | 335,941.17 |
| 213 | | 6.500 | 3,305.82 | 1,486.14 | 1,819.68 | | 334,455.03 |
| 214 | | 6.500 | 3,305.82 | 1,494.19 | 1,811.63 | | 332,960.84 |
| 215 | | 6.500 | 3,305.82 | 1,502.28 | 1,803.54 | | 331,458.56 |
| 216 | | 6.500 | 3,305.82 | 1,510.42 | 1,795.40 | | 329,948.14 |
| Sub Total | | | 39,669.84 | 17,597.49 | 22,072.35 | | |
| 217 | | 6.500 | 3,305.82 | 1,518.60 | 1,787.22 | | 328,429.54 |
| 218 | | 6.500 | 3,305.82 | 1,526.83 | 1,778.99 | | 326,902.71 |
| 219 | | 6.500 | 3,305.82 | 1,535.10 | 1,770.72 | | 325,367.61 |
| 220 | | 6.500 | 3,305.82 | 1,543.41 | 1,762.41 | | 323,824.20 |
| 221 | | 6.500 | 3,305.82 | 1,551.77 | 1,754.05 | | 322,272.43 |
| 222 | | 6.500 | 3,305.82 | 1,560.18 | 1,745.64 | | 320,712.25 |
| 223 | | 6.500 | 3,305.82 | 1,568.63 | 1,737.19 | | 319,143.62 |
| 224 | | 6.500 | 3,305.82 | 1,577.13 | 1,728.69 | | 317,566.49 |
| 225 | | 6.500 | 3,305.82 | 1,585.67 | 1,720.15 | | 315,980.82 |
| 226 | | 6.500 | 3,305.82 | 1,594.26 | 1,711.56 | | 314,386.56 |
| 227 | | 6.500 | 3,305.82 | 1,602.89 | 1,702.93 | | 312,783.67 |
| 228 | | 6.500 | 3,305.82 | 1,611.58 | 1,694.24 | | 311,172.09 |
| Sub Total | | | 39,669.84 | 18,776.05 | 20,893.79 | | |
| 229 | | 6.500 | 3,305.82 | 1,620.30 | 1,685.52 | | 309,551.79 |
| 230 | | 6.500 | 3,305.82 | 1,629.08 | 1,676.74 | | 307,922.71 |
| 231 | | 6.500 | 3,305.82 | 1,637.91 | 1,667.91 | | 306,284.80 |
| 232 | | 6.500 | 3,305.82 | 1,646.78 | 1,659.04 | | 304,638.02 |
| 233 | | 6.500 | 3,305.82 | 1,655.70 | 1,650.12 | | 302,982.32 |
| 234 | | 6.500 | 3,305.82 | 1,664.67 | 1,641.15 | | 301,317.65 |
| 235 | | 6.500 | 3,305.82 | 1,673.68 | 1,632.14 | | 299,643.97 |
| 236 | | 6.500 | 3,305.82 | 1,682.75 | 1,623.07 | | 297,961.22 |
| 237 | | 6.500 | 3,305.82 | 1,691.86 | 1,613.96 | | 296,269.36 |
| 238 | | 6.500 | 3,305.82 | 1,701.03 | 1,604.79 | | 294,568.33 |
| 239 | | 6.500 | 3,305.82 | 1,710.24 | 1,595.58 | | 292,858.09 |
| 240 | | 6.500 | 3,305.82 | 1,719.51 | 1,586.31 | | 291,138.58 |
| Sub Total | | | 39,669.84 | 20,033.51 | 19,636.33 | | |

| No | Pmt Date | Int Rate | Monthly Schedule | Principal Paid | Interest Paid | Mtg Insurance | Balance |
|---|---|---|---|---|---|---|---|
| 241 | | 6.500 | 3,305.82 | 1,728.82 | 1,577.00 | | 289,409.76 |
| 242 | | 6.500 | 3,305.82 | 1,738.18 | 1,567.64 | | 287,671.58 |
| 243 | | 6.500 | 3,305.82 | 1,747.60 | 1,558.22 | | 285,923.98 |
| 244 | | 6.500 | 3,305.82 | 1,757.07 | 1,548.75 | | 284,166.91 |
| 245 | | 6.500 | 3,305.82 | 1,766.58 | 1,539.24 | | 282,400.33 |
| 246 | | 6.500 | 3,305.82 | 1,776.15 | 1,529.67 | | 280,624.18 |
| 247 | | 6.500 | 3,305.82 | 1,785.77 | 1,520.05 | | 278,838.41 |
| 248 | | 6.500 | 3,305.82 | 1,795.45 | 1,510.37 | | 277,042.96 |
| 249 | | 6.500 | 3,305.82 | 1,805.17 | 1,500.66 | | 275,237.79 |
| 250 | | 6.500 | 3,305.82 | 1,814.95 | 1,490.87 | | 273,422.84 |
| 251 | | 6.500 | 3,305.82 | 1,824.78 | 1,481.04 | | 271,598.06 |
| 252 | | 6.500 | 3,305.82 | 1,834.66 | 1,471.16 | | 269,763.40 |
| Sub Total | | | 39,669.84 | 21,375.18 | 18,294.66 | | |
| 253 | | 6.500 | 3,305.82 | 1,844.60 | 1,461.22 | | 267,918.80 |
| 254 | | 6.500 | 3,305.82 | 1,854.59 | 1,451.23 | | 266,064.21 |
| 255 | | 6.500 | 3,305.82 | 1,864.64 | 1,441.18 | | 264,199.57 |
| 256 | | 6.500 | 3,305.82 | 1,874.74 | 1,431.08 | | 262,324.83 |
| 257 | | 6.500 | 3,305.82 | 1,884.89 | 1,420.93 | | 260,439.94 |
| 258 | | 6.500 | 3,305.82 | 1,895.10 | 1,410.72 | | 258,544.84 |
| 259 | | 6.500 | 3,305.82 | 1,905.37 | 1,400.45 | | 256,639.47 |
| 260 | | 6.500 | 3,305.82 | 1,915.69 | 1,390.13 | | 254,723.78 |
| 261 | | 6.500 | 3,305.82 | 1,926.07 | 1,379.75 | | 252,797.71 |
| 262 | | 6.500 | 3,305.82 | 1,936.50 | 1,369.32 | | 250,861.21 |
| 263 | | 6.500 | 3,305.82 | 1,946.99 | 1,358.83 | | 248,914.22 |
| 264 | | 6.500 | 3,305.82 | 1,957.53 | 1,348.29 | | 246,956.69 |
| Sub Total | | | 39,669.84 | 22,806.71 | 16,863.13 | | |
| 265 | | 6.500 | 3,305.82 | 1,966.14 | 1,337.68 | | 244,988.55 |
| 266 | | 6.500 | 3,305.82 | 1,978.80 | 1,327.02 | | 243,009.75 |
| 267 | | 6.500 | 3,305.82 | 1,989.52 | 1,316.30 | | 241,020.23 |
| 268 | | 6.500 | 3,305.82 | 2,000.29 | 1,305.53 | | 239,019.94 |
| 269 | | 6.500 | 3,305.82 | 2,011.13 | 1,294.69 | | 237,008.81 |
| 270 | | 6.500 | 3,305.82 | 2,022.02 | 1,283.80 | | 234,986.79 |
| 271 | | 6.500 | 3,305.82 | 2,032.97 | 1,272.86 | | 232,953.82 |
| 272 | | 6.500 | 3,305.82 | 2,043.99 | 1,261.83 | | 230,909.83 |
| 273 | | 6.500 | 3,305.82 | 2,055.06 | 1,250.76 | | 228,854.77 |
| 274 | | 6.500 | 3,305.82 | 2,066.19 | 1,239.63 | | 226,788.58 |
| 275 | | 6.500 | 3,305.82 | 2,077.38 | 1,228.44 | | 224,711.20 |
| 276 | | 6.500 | 3,305.82 | 2,086.63 | 1,217.19 | | 222,622.57 |
| Sub Total | | | 39,669.84 | 24,334.12 | 15,335.72 | | |
| 277 | | 6.500 | 3,305.82 | 2,099.95 | 1,205.87 | | 220,522.62 |
| 278 | | 6.500 | 3,305.82 | 2,111.32 | 1,194.50 | | 218,411.30 |
| 279 | | 6.500 | 3,305.82 | 2,122.76 | 1,183.06 | | 216,288.54 |
| 280 | | 6.500 | 3,305.82 | 2,134.26 | 1,171.56 | | 214,154.28 |
| 281 | | 6.500 | 3,305.82 | 2,145.82 | 1,160.00 | | 212,008.46 |
| 282 | | 6.500 | 3,305.82 | 2,157.44 | 1,148.38 | | 209,851.02 |
| 283 | | 6.500 | 3,305.82 | 2,169.13 | 1,136.69 | | 207,681.89 |
| 284 | | 6.500 | 3,305.82 | 2,180.88 | 1,124.94 | | 205,501.01 |
| 285 | | 6.500 | 3,305.82 | 2,192.69 | 1,113.13 | | 203,308.32 |
| 286 | | 6.500 | 3,305.82 | 2,204.57 | 1,101.25 | | 201,103.75 |
| 287 | | 6.500 | 3,305.82 | 2,216.51 | 1,089.31 | | 198,887.24 |
| 288 | | 6.500 | 3,305.82 | 2,228.51 | 1,077.31 | | 196,658.73 |
| Sub Total | | | 39,669.84 | 25,963.84 | 13,706.00 | | |

| No | Pmt Date | Int Rate | Monthly Schedule | Principal Paid | Interest Paid | Mtg Insurance | Balance |
|---|---|---|---|---|---|---|---|
| 289 | | 6.500 | | | | | |
| 290 | | 6.500 | 3,305.82 | 2,240.59 | 1,065.23 | | 194,418.14 |
| 291 | | 6.500 | 3,305.82 | 2,252.72 | 1,053.10 | | 192,165.42 |
| 292 | | 6.500 | 3,305.82 | 2,264.92 | 1,040.90 | | 189,900.50 |
| 293 | | 6.500 | 3,305.82 | 2,277.19 | 1,028.63 | | 187,623.31 |
| 294 | | 6.500 | 3,305.82 | 2,289.53 | 1,016.29 | | 185,333.78 |
| 295 | | 6.500 | 3,305.82 | 2,301.93 | 1,003.89 | | 183,031.85 |
| 296 | | 6.500 | 3,305.82 | 2,314.40 | 991.42 | | 180,717.45 |
| 297 | | 6.500 | 3,305.82 | 2,326.93 | 978.89 | | 178,390.52 |
| 298 | | 6.500 | 3,305.82 | 2,339.54 | 966.28 | | 176,050.98 |
| 299 | | 6.500 | 3,305.82 | 2,352.21 | 953.61 | | 173,698.77 |
| 300 | | 6.500 | 3,305.82 | 2,364.95 | 940.87 | | 171,333.82 |
| Sub Total | | | 3,305.82 | 2,377.76 | 928.06 | | 168,956.06 |
| | | | 39,669.84 | 27,702.67 | 11,967.17 | | |
| 301 | | 6.500 | | | | | |
| 302 | | 6.500 | 3,305.82 | 2,390.64 | 915.18 | | 166,565.42 |
| 303 | | 6.500 | 3,305.82 | 2,403.59 | 902.23 | | 164,161.83 |
| 304 | | 6.500 | 3,305.82 | 2,416.61 | 889.21 | | 161,745.22 |
| 305 | | 6.500 | 3,305.82 | 2,429.70 | 876.12 | | 159,315.52 |
| 306 | | 6.500 | 3,305.82 | 2,442.86 | 862.96 | | 156,872.66 |
| 307 | | 6.500 | 3,305.82 | 2,456.09 | 849.73 | | 154,416.57 |
| 308 | | 6.500 | 3,305.82 | 2,469.40 | 836.42 | | 151,947.17 |
| 309 | | 6.500 | 3,305.82 | 2,482.77 | 823.05 | | 149,464.40 |
| 310 | | 6.500 | 3,305.82 | 2,496.22 | 809.60 | | 146,968.18 |
| 311 | | 6.500 | 3,305.82 | 2,509.74 | 796.08 | | 144,458.44 |
| 312 | | 6.500 | 3,305.82 | 2,523.34 | 782.48 | | 141,935.10 |
| Sub Total | | | 3,305.82 | 2,537.00 | 768.82 | | 139,398.10 |
| | | | 39,669.84 | 29,557.96 | 10,111.88 | | |
| 313 | | 6.500 | | | | | |
| 314 | | 6.500 | 3,305.82 | 2,550.75 | 755.07 | | 136,847.35 |
| 315 | | 6.500 | 3,305.82 | 2,564.56 | 741.26 | | 134,282.79 |
| 316 | | 6.500 | 3,305.82 | 2,578.45 | 727.37 | | 131,704.34 |
| 317 | | 6.500 | 3,305.82 | 2,592.42 | 713.40 | | 129,111.92 |
| 318 | | 6.500 | 3,305.82 | 2,606.46 | 699.36 | | 126,505.46 |
| 319 | | 6.500 | 3,305.82 | 2,620.58 | 685.24 | | 123,884.88 |
| 320 | | 6.500 | 3,305.82 | 2,634.78 | 671.04 | | 121,250.10 |
| 321 | | 6.500 | 3,305.82 | 2,649.05 | 656.77 | | 118,601.05 |
| 322 | | 6.500 | 3,305.82 | 2,663.40 | 642.42 | | 115,937.65 |
| 323 | | 6.500 | 3,305.82 | 2,677.82 | 628.00 | | 113,259.83 |
| 324 | | 6.500 | 3,305.82 | 2,692.33 | 613.49 | | 110,567.50 |
| Sub Total | | | 3,305.82 | 2,706.91 | 598.91 | | 107,860.59 |
| | | | 39,669.84 | 31,537.51 | 8,132.33 | | |
| 325 | | 6.500 | | | | | |
| 326 | | 6.500 | 3,305.82 | 2,721.58 | 584.24 | | 105,139.01 |
| 327 | | 6.500 | 3,305.82 | 2,736.32 | 569.50 | | 102,402.69 |
| 328 | | 6.500 | 3,305.82 | 2,751.14 | 554.68 | | 99,651.55 |
| 329 | | 6.500 | 3,305.82 | 2,766.04 | 539.78 | | 96,885.51 |
| 330 | | 6.500 | 3,305.82 | 2,781.02 | 524.80 | | 94,104.49 |
| 331 | | 6.500 | 3,305.82 | 2,796.09 | 509.73 | | 91,308.40 |
| 332 | | 6.500 | 3,305.82 | 2,811.23 | 494.59 | | 88,497.17 |
| 333 | | 6.500 | 3,305.82 | 2,826.46 | 479.36 | | 85,670.71 |
| 334 | | 6.500 | 3,305.82 | 2,841.77 | 464.05 | | 82,828.94 |
| 335 | | 6.500 | 3,305.82 | 2,857.16 | 448.66 | | 79,971.78 |
| 336 | | 6.500 | 3,305.82 | 2,872.64 | 433.18 | | 77,099.14 |
| Sub Total | | | 3,305.82 | 2,888.20 | 417.62 | | 74,210.94 |
| | | | 39,669.84 | 33,649.65 | 6,020.19 | | |

Page 8

| No | Pmt Date | Int Rate | Monthly Schedule | Principal Paid | Interest Paid | Mtg Insurance | Balance |
|----|----------|----------|------------------|----------------|---------------|---------------|---------|
| 337 | | 6.500 | 3,305.82 | 2,903.84 | 401.98 | | 71,307.10 |
| 338 | | 6.500 | 3,305.82 | 2,919.57 | 386.25 | | 68,387.53 |
| 339 | | 6.500 | 3,305.82 | 2,935.39 | 370.43 | | 65,452.14 |
| 340 | | 6.500 | 3,305.82 | 2,951.29 | 354.53 | | 62,500.85 |
| 341 | | 6.500 | 3,305.82 | 2,967.27 | 338.55 | | 59,533.58 |
| 342 | | 6.500 | 3,305.82 | 2,983.35 | 322.47 | | 56,550.23 |
| 343 | | 6.500 | 3,305.82 | 2,999.51 | 306.31 | | 53,550.72 |
| 344 | | 6.500 | 3,305.82 | 3,015.75 | 290.07 | | 50,534.97 |
| 345 | | 6.500 | 3,305.82 | 3,032.09 | 273.73 | | 47,502.88 |
| 346 | | 6.500 | 3,305.82 | 3,048.51 | 257.31 | | 44,454.37 |
| 347 | | 6.500 | 3,305.82 | 3,065.03 | 240.79 | | 41,389.34 |
| 348 | | 6.500 | 3,305.82 | 3,081.63 | 224.19 | | 38,307.71 |
| Sub Total | | | 39,669.84 | 35,903.23 | 3,766.61 | | |
| 349 | | 6.500 | 3,305.82 | 3,098.32 | 207.50 | | 35,209.39 |
| 350 | | 6.500 | 3,305.82 | 3,115.10 | 190.72 | | 32,094.29 |
| 351 | | 6.500 | 3,305.82 | 3,131.98 | 173.84 | | 28,962.31 |
| 352 | | 6.500 | 3,305.82 | 3,148.94 | 156.88 | | 25,813.37 |
| 353 | | 6.500 | 3,305.82 | 3,166.00 | 139.82 | | 22,647.37 |
| 354 | | 6.500 | 3,305.82 | 3,183.15 | 122.67 | | 19,464.22 |
| 355 | | 6.500 | 3,305.82 | 3,200.39 | 105.43 | | 16,263.83 |
| 356 | | 6.500 | 3,305.82 | 3,217.72 | 88.10 | | 13,046.11 |
| 357 | | 6.500 | 3,305.82 | 3,235.15 | 70.67 | | 9,810.96 |
| 358 | | 6.500 | 3,305.82 | 3,252.68 | 53.14 | | 6,558.28 |
| 359 | | 6.500 | 3,305.82 | 3,270.30 | 35.52 | | 3,287.98 |
| 360 | | 6.500 | 3,305.79 | 3,287.98 | 17.81 | | 0.00 |
| Sub Total | | | 39,669.81 | 38,307.71 | 1,362.10 | | |
| TOTAL | | | 1,050,518.85 | 555,000.00 | 495,518.85 | | |

WACHOVIA MORTGAGE, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

## PICK-A-PAYMENT sm LOAN

### WACHOVIA AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE, MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

LOAN NUMBER:  0048454243                                   DATE: April 10, 2008

BORROWER(S): PARESH SHAH, A MARRIED MAN   sometimes called "Borrower" and sometimes simply called "I" or "me."

PROPERTY ADDRESS: 9733 LAUREL CT, MUNSTER, IN  46321-3558

1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $555,000.00 , called "Principal," plus interest, and any other charges incurred during the course of the loan, to the order of the Lender. The Lender is WACHOVIA MORTGAGE, FSB, a FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom this Note is transferred.

2.   INTEREST

   (A)   Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid.  I will pay interest at the yearly rate of 7.650%.  The interest rate I will pay  may change as described in this Section 2.  Interest will be charged on the basis of a twelve month year and a thirty day month.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

   (B)   Interest Change Dates

The interest rate I will pay may change on the 15th day of June, 2008 and on the same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

   (C)   Interest Rate Limit

My lifetime maximum interest rate limit is 11.950%, called "Lifetime Rate Cap."

LENDER'S USE ONLY

0  0  1

**EXHIBIT**

C

0048454243

(D) Index

Beginning with the first Interest Change Date, my interest rate will be based on an "Index." The Index is the "Cost of Savings Index" as published by Wachovia Corporation. The Cost of Savings Index is the weighted average of the interest rates in effect as of the last business day of each calendar month on the U.S. dollar denominated personal time deposits (as defined by the Board of Governors of the Federal Reserve System for purposes of reporting deposits on FR 2900 by commercial banks) held by the U.S. branches and non-U.S. branches located on U.S. military facilities of the depository institution subsidiaries of Wachovia Corporation that hold federally insured deposits.

For this purpose, a business day is any calendar day other than Saturday, Sunday, or any legal holiday for national banks.

The Index will be published monthly by Wachovia Corporation, on or before the fifteenth day of each month, and made readily available. The most recent Index figure available on each Interest Change Date is called the "Current Index."

If an Index is substituted pursuant to section 2(F) of this Note, the alternate Index will become the Index.

(E) Calculation of Interest Rate Changes

Lender will calculate my new interest rate by adding 3.000 percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

(F) Alternate Index

The Lender may choose an alternate index if the Index is no longer available. For purposes of this Section 2(F), the Cost of Savings Index or an alternate Index is no longer available if:

(1)   The Lender, in its sole discretion, determines that (a) the Board of Governors of the Federal Reserve System has made a material change in the definition of personal time deposits or time deposits for purposes of reporting deposits on FR 2900 or a comparable successor report; or (b) the Index is otherwise calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note; or

(2)   Applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note.

The selection of an alternate index shall be at Lender's sole discretion. The alternate index may be a national or regional index or another type of index accepted or approved by the Lender's primary regulator. The Lender will give me notice of the alternate index.

3.  PAYMENTS

(A)   Time and Place of Payments

I will pay Principal and Interest by making payments every month.

I will make my monthly payments on the 15th day of each month beginning on June 15, 2008. I will make these payments every month until I have paid (i) all the Principal and interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on May 15, 2038, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 659568, San Antonio, TX 78265 or at a different place if required by notice from the Lender.

(B)   Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 2,339.91. This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

(C)   Payment Change Dates

My monthly payment will change as required by Section 3(D) below beginning on the 15th day of June, 2009 and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

(D)   Calculation of Payment Changes

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, together with interest at the interest rate in effect on the day of calculation by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

0046454243

(E)    Deferred Interest; Additions to My Unpaid Principal

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

(F)    Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid principal balance can never exceed 125% of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

(G)    Payment Cap Limitation; Exceptions

Beginning with the 10th Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

(H)    Notice of Payment Changes

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

**4.    FAILURE TO MAKE ADJUSTMENTS**

If, for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing.  I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal.  During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

**6.    MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)    Late Charges for Overdue Payments

If the Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be 5.00% of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

0048464243

(B)  Default

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

(C)  Notice of Default

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

(D)  No Waiver by Lender

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

(E)  Payment of Lender's Costs and Expenses

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at 9733 LAUREL CT, MUNSTER, IN  46321-3569, or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at Wachovia Mortgage, FSB, P.O. Box 659558, San Antonio, TX  78265 or at a different address if I am given a notice of that different address.

9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment, notice of dishonor, notice or acceleration, and protest. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

11.  SECURED NOTE - ACCELERATION

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph 26:

AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

SD253D (2006-09-6)    [D02 (2006-09-6)]    ADJUSTABLE PICK-A-PAYMENT NOTE
Page 4

IN

0048464243

Exception to Acceleration of Payment of Sums Secured. If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

    (i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

    (ii)    Lender approves the creditworthiness of the transferee in writing;

    (iii)  transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

    (iv)  an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and Interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

    (v)    the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

12.  GOVERNING LAW; SEVERABILITY

    This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

13.  CLERICAL ERRORS

    In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

14.  LOST, STOLEN OR MUTILATED DOCUMENTS

    If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS

0048454243

SIGNATURE PAGE

NOTICE TO BORROWER(S):

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

X _____ (Seal)
  PARESH SHAH

X _____

RECORDING REQUESTED BY:         ABOVE FOR RECORDER'S USE ONLY
WACHOVIA MORTGAGE, FSB

WHEN RECORDED MAIL TO:
WACHOVIA MORTGAGE, FSB
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0048454243

NOTE AMOUNT: 555,000.00

080411716                        MORTGAGE

THIS IS A FIRST MORTGAGE WHICH SECURES A NOTE WHICH CONTAINS
PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND
AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES
AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE
RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY
PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS MORTGAGE IS
$693,750.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.    DEFINITIONS OF WORDS USED IN THIS MORTGAGE
      (A)    Security Instrument. The Mortgage, which is dated April 10, 2008 will be called the
"Security Instrument."

      (B)    Borrower. PARESH SHAH AND SHOBHANA SHAH, HUSBAND AND WIFE

sometimes will be called "Borrower" and sometimes simply "I" or "me."

      (C)    Lender. WACHOVIA MORTGAGE, FSB, ITS SUCCESSORS AND/OR ASSIGNEES,
will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under
the laws of the United States. Lender's address is 4101 Wiseman Blvd., San Antonio, TX 78251.



SD814A (2005-02-2)
DEFERRED INTEREST                      Page 1                    IN

LENDER'S USE ONLY



EXHIBIT
D

4'

0048454243

(D)    Note. The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$555,000.00** ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay the debt in full by May 15, 2038.

(E)    Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F)    Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G)    Person. Any person, organization, governmental authority or other party will be called "Person."

II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I mortgage, irrevocably grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III.    DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described below:

(i)    The property which is located at 9733 LAUREL CT, MUNSTER, IN  46321-3668. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

0048454243

(ix)  All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)  All of the amounts that I pay to Lender under Paragraph 2 below.

IV.  **BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (i) I lawfully own the Property; (ii) I have the right to mortgage, grant and convey the Property to Lender; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

1.  BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

2.  PAYMENTS FOR TAXES AND INSURANCE

(A)  Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

(B)  Escrow Accounts

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

0048454243

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all Sums Secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 27, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the Sums Secured by this Security Instrument.

### 3.  APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;
Second, to pay any advances due to Lender under this Security Instrument;
Third, to pay the amounts due to Lender under Paragraph 2 above;
Fourth, to pay interest due under the Secured Notes;
Fifth, to pay deferred interest due under the Secured Notes;
Sixth, to pay principal due under the Secured Notes;
Last, to pay late charges due under the Secured Notes.

### 4.  BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

### 5.  BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a Standard Mortgagee Clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

0048454243

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 27 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.  **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

7.  **LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may, without limitation, include appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5 above, and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

0048454243

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8.    LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

9.    AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing. If only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

10.   CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

(A)  Borrower's Obligations
Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

(B)  Lender's Rights
Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 27 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument.

IN

0048454243

11.    OBLIGATIONS OF BORROWER, CO-SIGNERS AND OF PERSONS TAKING OVER
BORROWER'S RIGHTS OR OBLIGATIONS

Except as provided below, if more than one Person signs this Security Instrument as Borrower,
each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security
Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us
individually or against all of us together. This means that any one of us may be required to pay all of the
Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a
"co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the
co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally
obligated to pay the Sums Secured by this Security Instrument; and (c) agrees that Lender and any
other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the
terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all
of my rights and will be obligated to keep all of my promises and agreements made in this Security
Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security
Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made
in this Security Instrument.

12.    MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan
charges, and that law is finally interpreted so that the interest or other loan charges collected or to be
collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be
reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already
collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may
choose to make this refund by reducing the principal owed under the Secured Notes or by making a
direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial
prepayment without any prepayment charge under the Secured Notes.

13.    LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Secured Notes or this Security
Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums
Secured by this Security Instrument.

14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it
or by mailing it by first class mail unless applicable law requires use of another method. The notice will
be addressed to me at 9733 LAUREL CT, MUNSTER, IN 46321-3568. A notice will be given to me at
an alternative address if I give Lender a notice of my alternative address. I may give notice to Lender of
my alternative address in writing or by calling Lender's customer service telephone number provided on
my billing statement. I may designate only one mailing address at a time for notification purposes.
Except as permitted above for changes of address, any notice that must be given to Lender under this
Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section
I.(C) above entitled, "Definitions of Words Used in this Mortgage." unless Lender gives me notice of a
different address. Any notice required by this Security Instrument is given when it is mailed or when it is
delivered according to the requirements of this Paragraph 14 or of applicable law.

15.    GOVERNING LAW; SEVERABILITY

This Security Instrument and the Secured Notes shall be governed by and construed
under federal law and federal rules and regulations, including those for federally chartered
savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of
the jurisdiction in which the Property is located. In the event that any of the terms or provisions of
this Security Instrument or the Secured Notes are interpreted or construed by a court of competent
jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so
construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the
Secured Notes.

0048454243

16.    BORROWER'S COPY

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B), enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 27, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. I assign these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment.

19.    CLERICAL ERRORS

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

20.    LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

21.    WAIVER OF STATUTE OF LIMITATIONS

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

0048454243

## 22.  CAPTIONS

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

## 23.  MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

## 24.  CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)  If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

(B)  The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of Incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)  If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)  I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

0048454243

### 25.   FUTURE ADVANCES

The Security Instrument secures (a) future obligations and advances up to the maximum amount stated in the introductory paragraph to this Security Instrument (whether made as an obligation, made at the option of Lender, made after a reduction to zero (0) or other balance, or made otherwise) to the same extent as if the future obligations and advances were made on the date of execution of this Security Instrument and (b) future modifications, extensions, and renewals of any indebtedness or obligations secured by this Security Agreement. Such future obligations and advances, with interest, will then be additional Sums Secured under this Security Instrument.

### 26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

Exception to Acceleration of Payment of Sums Secured. If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)   Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)   Lender approves the creditworthiness of the transferee in writing;

(iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)   the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

### 27.   RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

SD814J (2005-02-2)

Page 10

IN

0048454243

If there is a Breach of Duty by me, the Lender may take action to have the Property sold under any applicable Federal Law, rule or regulation and, where Federal Law is not applicable, under the law of the state where the Property is located, which will be called the "Applicable Law."

Lender does not have to give me notice of a Breach of Duty unless notice is required by Applicable Law. If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed under the Applicable Law to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender except as limited or prohibited by the Applicable Law. If the Property is sold under the Applicable Law, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property, except to the extent that the Applicable Law limits or prohibits any such charges.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to, attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

28.    LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT

When Lender has been paid all of the amounts secured by this Security Instrument, Lender shall release or cancel this Security Instrument.

29.    STATEMENT OF OBLIGATION

To the extent allowed by law, I will give Lender a fee for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

30.    WAIVER OF REDEMPTION

My right of redemption is waived to the extent allowed by applicable law.

31.    WAIVER OF VALUATION AND APPRAISEMENT

Borrower waives all right of valuation and appraisement.

32.    RIDERS TO THIS SECURITY INSTRUMENT

If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

THIS SPACE INTENTIONALLY LEFT BLANK.

0048454243

33.    ( X )    QUICK QUALIFYING LOAN PROGRAM
    I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) if I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

    If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

34.    ( X )    OWNER OCCUPANCY
    Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

    If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.


    ( X )    VALUE INDICATES THAT THE PARAGRAPH APPLIES.


THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

0048454243

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

WITNESS(ES):

_____     _____

BORROWER(S):

_____     (Seal)
PARESH SHAH

_____     (Seal)
SHOBHANA SHAH

Mailing Address: 9733 LAUREL CT, MUNSTER, IN 46321-3568

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security Number in this document, unless required by law. Dorrie Brennan.

THIS INSTRUMENT WAS PREPARED BY:     DORRIE BRENNAN
4101 WISEMAN BOULEVARD
SAN ANTONIO, TX 78251

SD814 (2004-03-1)          (X34 (2004-02-1))          Page 13          IN

# ACKNOWLEDGMENT

State of: ILL

County of: COOK

On APRIL 10, 2008 , before me, GEORGE SHAMOUN

Notary Public, personally appeared PARASH SHAH & Shobhana Shah
Personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument

WITNESS my hand and official seal

_____

_____ Notary Public

My commission expires 8/5/08

> "OFFICIAL SEAL"
> George Shamoun
> Notary Public, State of Illinois
> My Commission Exp. 08/05/2008

Description of Attached Document:

Title or Type of Document:_____

Document Date:_____ Number of pages:_____

Signer(s) Other than typed above:_____

| WACHOVIA MORTGAGE, FSB | FEDERAL TRUTH IN LENDING DISCLOSURE REQUIRED BY REGULATION Z |
|---|---|

Customer's Name:                                             Date: April 10, 2008
PARESH SHAH                                                   Loan No.: 0048454243

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total price of your purchase on credit including your down payment of Not Applicable |
|---|---|---|---|---|
| 7.715 % | $ 1,066,423.67 | $547,474.72 | $1,613,898.39 | Not Applicable |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due: MONTHLY beginning on |
|---|---|---|
| 12 | $   2,339.91 | 06/15/08 |
| 12 | 2,516.40 | 06/15/09 |
| 12 | 2,704.05 | 06/15/10 |
| 12 | 2,906.85 | 06/15/11 |
| 12 | 3,124.86 | 06/15/12 |
| 12 | 3,359.22 | 06/15/13 |
| 12 | 3,611.16 | 06/15/14 |
| 12 | 3,882.00 | 06/15/15 |
| 12 | 4,173.15 | 06/15/16 |
| 12 | 4,486.14 | 06/15/17 |
| 239 | 5,069.44 | 06/15/18 |
| 1 | 5,069.35 | 05/15/38 |

VARIABLE RATE: THIS LOAN CONTAINS AN ADJUSTABLE RATE FEATURE. SEE THE ADJUSTABLE LOAN PROGRAM DISCLOSURE STATEMENT PREVIOUSLY GIVEN TO YOU.

This loan DOES NOT HAVE A DEMAND FEATURE.

Insurance:   You may obtain property insurance from anyone you want who is acceptable to the Lender.

Security:    You are giving a security interest in the real property located at 9733 LAUREL CT, MUNSTER, IN  46321-3568.

Filing Fees:  $   88.00

Late Charge: If a payment is late, you will be charged 5.00% of the payment.

Prepayment: If you pay off the loan early, you MAY have to pay a penalty and you WILL NOT be entitled to a refund of ANY PART OF THE FINANCE CHARGE ALREADY PAID.

Assumption: SOMEONE BUYING YOUR HOUSE CAN ASSUME THE REMAINDER OF THE LOAN UNDER CERTAIN TERMS AND CONDITIONS. TERMS MAY BE DIFFERENT FROM YOUR ORIGINAL TERMS - SEE YOUR ADJUSTABLE LOAN PROGRAM DISCLOSURE STATEMENT.

Due on Sale: If the property securing the loan is sold or transferred to anyone without first obtaining Lender's written consent, all sums owed could become immediately due and payable. In this event failure to pay all the sums declared due and payable may result in the forced sale of the property.

See your Contract documents for additional information about non-payment, default, any required repayment in full before the scheduled date and other important terms and conditions of your loan.

By signing below, you acknowledge that you received a copy of this FEDERAL TRUTH IN LENDING DISCLOSURE.

_Pares 152_                                          4/10/08
PARESH SHAH                                          Date

GF424A1 (2004-03-3)
FINAL       DISTRIBUTION:   1 COPY-RETURN SIGNED TO LENDER    1 COPY-CUSTOMER    2 COPIES-FILE

IN
LENDER'S USE ONLY

073

EXHIBIT
E

# APPEL & KELLY, LTD.
## Attorneys At Law
### 18607 Torrence Avenue - Suite 2A
### Lansing, Illinois   60438

Thomas A. Appel                                    Telephone: 708-474-8800
Timothy M. Kelly                                   Facsimile:  708-474-5232

Of counsel:                                        E-mail:
Peter T. Appel                                     tappel@appellawfirm.com


## FAX TRANSMITTAL SHEET


To:           Wachovia Mortgage, FSB
              Final Documentation
              ATTN: Operations Support Dept., TX 1731

Fax Number:   (210) 509-1293

From:         Thomas A. Appel

Date:         4-15-08

Total Pages:

Remarks:


THIS FACSIMILE CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE ADDRESSEE(S) NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FACSIMILE, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.



EXHIBIT
F

# APPEL & KELLY, LTD.

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

CHASE BANK BUILDING · SUITE 2A

18607 TORRENCE AVENUE

LANSING, ILLINOIS 60438-2833

THOMAS A. APPEL*
TIMOTHY M. KELLY

KEVIN P. O'FLAHERTY

*ALSO ADMITTED IN INDIANA

TELEPHONE (708) 474-8800
FACSIMILE (708) 474-5232
appellawfirm.com

OF COUNSEL

PETER T. APPEL

April 17, 2008

VIA FACSIMILE (210) 509-1293

Wachovia Mortgage, FSB
Final Documentation
ATTN: Operations Support Dept., TX 1731
401 Wiseman Boulevard
San Antonio, TX 78251

Re:    Paresh and Shabhan Shah
       9733 Laurel Court, Munster, IN 46321-3568

Dear Sir or Madam:

Enclosed please find executed Notice of Right to Cancel - General executed by my clients. While the cancellation date shown in the Notice is April 15, 2008, the underlying loan documents were in fact executed on April 15, and not on April 10 or April 11 as the loan documents seem to indicate. Moreover, my client was not provided with a full set of copies of the note, mortgage, and related documents at the time he signed, and the documents provided to him were incomplete and missing all of the critical terms of the loan. The funds were already wired to my client's account. Please advise how these funds can be returned to Wachovia. Thank you.

Very truly yours,

Thomas A. Appel

TAA/dn
cc: George Gilou
Enclosure

0048454243

| WACHOVIA MORTGAGE, FSB | NOTICE OF RIGHT TO CANCEL - GENERAL |
|---|---|
|  | (LENDER CURRENTLY DOES NOT HAVE A LOAN ON THE PROPERTY) |

## A. YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a security interest in your home. You have a legal right under federal law to cancel this transaction without cost, within three business days from whichever of the following events occurs last:

(1) the date of the new transaction, which is **April 10, 2008** ; or

(2) the date you received your new Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the security interest in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

## B. HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing at: Wachovia Mortgage, FSB, FINAL DOCUMENTATION, ATTN: OPERATIONS SUPPORT DEPARTMENT, TX1731, 4101 WISEMAN BOULEVARD, SAN ANTONIO, TEXAS 78251, FAX NUMBER (210) 699-1293.

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice to the above location no later than midnight of **April 15, 2008** (or midnight of the third business day following the latest of the three events listed above in Section A). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

## C. CANCELLING THIS TRANSACTION

I WISH TO CANCEL. (DO NOT SIGN HERE UNLESS YOU WISH TO CANCEL)

Consumer's Signature _____    Date _4-17-08_

_Shobhana Shah_

---

### ACKNOWLEDGEMENT OF RECEIPT OF COPIES

BY MY SIGNATURE WHICH FOLLOWS, I acknowledge that I received two copies of this Notice of Right to Cancel to keep (in addition to the one signed and returned to Wachovia Mortgage, FSB)

Consumer's Signature X _____    Date _____
  PARESH SHAH

X _____

Property Address:    9733 LAUREL CT
                     MUNSTER, IN   46321-3569

Please return a signed copy of this Notice of Right to Cancel to the address shown above. Keep the other two copies.

0 2 4
LENDER'S USE ONLY

SD332 (2004-09-4)
DISTRIBUTION:    1 COPY-RETURN SIGNED TO LENDER    2 COPIES-BORROWER    1 COPY-FILE    IN

TRANSMISSION VERIFICATION REPORT

```
                                          TIME : 04/18/2008 16:43
                                          NAME : APPEL LAW OFFICES
                                          FAX  : 7084745232
                                          TEL  : 7084748900
```

```
      DATE,TIME              04/18 16:41
      FAX NO./NAME           12105091293
      DURATION               00:01:28
      PAGE(S)                03
      RESULT                 OK
      MODE                   STANDARD
                             ECM
```

 **WACHOVIA**

April 25, 2008

Appel & Kelly, LTD
Attention: Thomas A. Appel
18607 Torrence Ave. Suite 2A
Lansing, Illinois 60438

RE:   Wachovia Loan no. 0048454243
                    Paresh and Shabhan Shah
                    9733 Laurel Court
                    Munster, IN 46321-3568

Dear Mr. Appel,

Wachovia has carefully reviewed your facsimile received on April 18, 2008. In your fax, you enclosed a copy of the Notice of Right to Cancel signed by your client requesting to cancel the above loan. The signature was dated April 17, 2008 received on April 18, 2008.

Wachovia's records do not show any receipt of a copy of the signed Notice of Right to cancel from your client before Wachovia received the copy by facsimile on April 18, 2008. The Federal Truth-In-Lending law provides that the right to cancel terminates unless the borrower transmits the signed request to cancel to the creditor within three business days of the date the borrowers signed the loan documents. The loan documents were executed on April 10, 2008 per the date on the Deed of Trust notary page and the date of acknowledgement on the Notice of Right to Cancel. Thus the request to cancel was untimely. Your clients' loan with Wachovia remains valid and enforceable. Please be sure to note that your client is still obligated to make timely payments on their loan.

Of course, your client is always free to obtain a new loan from another lender and pay off the Wachovia loan, subject to the terms of your Wachovia loan, including any prepayment fee that would apply. Also, Wachovia does offer certain loan modifications to borrowers who desire them. If your clients are interested in any available Wachovia modification, they may contact Wachovia to see if they would qualify.

Very truly yours,

Kimberly Alcala
Post Closing Services, Final Documentation

**EXHIBIT**

G